## The Illinois Central Railroad Company

### *v.*

### Jacob A. Kanouse.

1. Railroad not fenced—*liability for injury to stock.* Where the company owning a railroad track which is not fenced as required by law, by contract, allows another company to run trains over such track, by one of which trains stock is injured, the company running the train is liable for such injury, even though the same was a result of the unfenced condition of the road.

2. In such case, it being the duty of the company owning the road to fence it, and the injury being a result of their neglect of that duty, they would also be liable.

3. Where a railroad company undertakes, by agreement, to use a road in a defective condition, and control the running of their trains upon it, the demands of public policy require that they should be responsible for all injury resulting from the use by them of the road while in such defective condition.

Writ of Error to the Circuit Court of McLean county; the Hon. John M. Scott, Judge, presiding

On the 11th of March, 1857, a contract was made between the Peoria and Oquawka Railroad company and the Illinois Central Railroad company, which appears at length in the opinion. In the month of June, 1863, a horse belonging to Kanouse was killed upon the track of the Peoria and Oquawka road, being struck by the freight train of the Illinois Central company.

In November, 1863, Kanouse brought suit in case, in the Circuit Court of McLean county, to recover the value of the horse. On the trial it was proven that the horse was killed at midnight, fifty rods west of the town of Chenoa, in McLean county, by the through freight train of the Central company, where the track was not and never had been fenced; that no highway crossed the railroad at that place, and by reason of the non-fencing the said horse was killed; that the horse was worth $140; that the Central railroad had for more than three years previous been running their through freight trains over

that road.   Judgment was rendered for Kanouse for $140, and costs.   From that judgment this writ of error is prosecuted.

Mr. M. HAY, for the plaintiffs in error.

Messrs. BRIER & BIRCH, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

On the 11th of March, 1857, the following agreement was made:

"This agreement, made at Chicago on the 11th day of March, in the year one thousand eight hundred and fifty-seven, between the Peoria and Oquawka Railroad company, of the first part, and the Illinois Central Railroad company, of the second part, witnesseth :

"The first party agrees to permit the second party to use so much of its track as lies between the intersection of the two lines of railroad near Panola and the intersection of the lines of the two railroads near Onarga for the passage of its freight trains, and to supply the necessary water for such freight trains during such passage.   The first party agrees to keep its track between these points in good repair, and to maintain the necessary supply of water.   The times of running said freight trains shall be regulated by the first party's time-table, and the first party agrees to adjust its time-table in such manner as to afford all due and convenient facility to all such freight trains as the second party shall send upon such line.   The first party consents that the second party may use, without compensation, so much of the first party's railroad as lies between the second party's main line and the junction with the Chicago, Alton and St. Louis railroad; for the use of the remainder of the first described section of the first party's road, the second party agrees to pay to the first party one-half of all the money which the second party may receive for the transportation of freight upon the first party's railroad, or any part thereof, between the

18—39TH ILL.

second party's main line and its branch. For the purposes of this agreement it is understood between the parties that the distance between the Chicago, Alton and St. Louis railroad and the Chicago branch of the Illinois Central shall be computed the same distance as between the main line and the branch of the second party's road. The price of transportation to be fixed by the second party at the same rate which may be charged by the party of the second part for the transportation of freight of like description upon the second party's railroad; but the first party reserves to itself the right to transact all local business upon its own line of railroad, and the parties hereby agree that the same is not embraced within the scope and spirit of this agreement.

" The second party shall keep its accounts of said transportation open at reasonable times to the inspection of the first party or to its lessees, and shall make monthly payments of the first party's share of said earnings at the second party's office at Chicago, either to the trustees of mortgage upon said section of said railroad, or to whomsoever may be thereto lawfully entitled.

" The second party hereby guarantees that it will annually pay, under the above arrangement, during the whole of said term of twenty-five years, a sum of not less than fifty thousand dollars, and the first party consents that the second party may retain all which it may receive for transportation on the first party's railroad, beyond the sum of seventy-five thousand dollars per annum. In case the track shall become broken or in disrepair, the first party shall immediately repair the same on notice, and maintain it in good running order; if repairs become necessary before notice can be given, the first party shall repay to said second party such reasonable expenses as it shall incur, either for repairs or the supply of water, or any other necessary purpose.

" The second party shall supply the fuel required for its own trains, and shall have the right to use the stations and station accommodations of first party's for the trains which second party is entitled to run over said first mentioned section of first

party's road.   This contract shall become binding at the time
when the track between the two points shall be open for use,
and shall continue for the period of twenty-five years from said
time.   And whereas, the parties intend that the sum which the
second party hereby agrees to pay as rent for its use of the
above described section of the first party's railroad, shall be
applied, first, to pay the interest and provide the sinking fund
of five hundred (numbered from one to five hundred inclusive)
of the seven hundred and fifty bonds of one thousand dollars
each, secured by a deed of trust of said sections, of which
William H. Osborn and I. Newton Perkins are trustees ; the
balance of said rent to be applied toward paying the interest
and providing the sinking fund of the balance of said bonds, to
which deed reference may be had for a specification of the
exact conditions and limitations of said trust.   It is, therefore,
further agreed that it shall be the privilege of the second party
to require that this contract, and all the terms and conditions
thereof, shall remain in force after the expiration of the twenty-
five years, until all and each of said bonds shall be paid.

"And whereas, Messrs. Creegor, Secor & Co., being con-
tractors for the construction of the above described section
of said party's railroad, have acquired certain interests and
privileges therein.   Now these presents witness, that the said
Creegor, Secor & Co. become parties to this agreement and
give their assent to the same and likewise to the making
and delivery of the above named proposed bond and mortgage,
so that this agreement and each provision thereof may be
carried into full effect after the true intent of the parties.

"It is hereby expressly understood and agreed that nothing
herein shall be construed as conferring upon the second party
the right or privilege of transporting upon the first party's rail-
road any freight, the point of delivery of which is west of the
junction of said first party's road and second party's main line
of road.   In case this agreement from any cause fail to give
authority to the second party to use any portion as it above
guarantees, then the second party shall be required to pay to
the first party only a just proportion of its receipts for trans-

portation upon such portion of the first party's railroad, as it may rightfully use by force of this agreement.

The PEORIA & OQUAWKA R. R. CO.

[SEAL.]  By N. B. CURTIS, *President.*

CREEGOR, SECOR & CO.

CHAS. A. SECOR, } By SAMUEL GILMAN, their
JAS. F. SECOR,  }  attorney in fact.

SAML. GILMAN,

W. H. CREEGOR,

THOS. C. FIELDS,

[Ill. C. R. R. The ILLINOIS CENTRAL R. R. CO.
Seal.]  By W. H. OSBORN, *President.*"

The plaintiff below having had a horse killed by the train of the Illinois Central Railroad company, running on this road under this agreement, brought his action against that company for damages. The declaration was in case under the statute imposing liabilities on railroad companies for killing stock, when the roads are not fenced as the statute requires.

The defendant pleaded not guilty, and gave notice of the above agreement, which was put in evidence.

A trial was had by the court, by consent, without a jury, and a finding for the plaintiff below for one hundred and forty dollars, being the proved value of the horse.

A motion was made for a new trial which was overruled, and a judgment entered against the railroad company for one hundred and forty dollars and costs.

To reverse this judgment the railroad company bring the case here by writ of error, and assign for error this finding of the court, and in refusing a new trial.

The case was fully made out by the testimony, and the only question made here is, which railroad company is liable for this injury?

It was admitted by the plaintiff below, on the trial, that at the time his horse was killed, the Peoria and Oquawka Railroad company, under the name of the Logansport, Peoria and Burlington Railroad company, was in the full possession, use and

occupation of this railroad, by running daily two trains of passenger cars and locomotives and divers freight trains on the road, and had full control and management of the road, except as modified by the above agreement.

The road was never fenced, and had been used by the Illinois Central more than three years prior to the injury complained of.

That it was the duty of the Peoria and Oquawka company to fence the road, they being the owners of it, cannot, in view of the various decisions of this court on that point, be denied.

It is insisted by the plaintiffs in error that they had but a mere license to run their trains over the track, and no authority to enter upon or fence the sides of the track, and no obligation rested upon them so to do, and, there being no obligation, there could arise no liability. In support of this view, counsel refer to the cases of *Whitney* v. *The Atlantic and St. Lawrence Railroad Co.*, 44 Maine, 362, and *Wyman* v. *Penobscot and Kennebec Railroad Co.*, 46 id. 162.

These cases fully sustain the position taken by the counsel, and the opinions are by a most able court, and we have fully considered them, but cannot concur in the conclusions to which that court arrived.

A case is reported in 16 Barb. (N. Y.) 315, *Parker* v. *Rensselaer and Saratoga Railway*, in which it was held, where this railway company was running upon the Saratoga and Schenectady railway by virtue of a contract, and the plaintiff's cow was killed, through a defect of cattle-guards, which it was the duty of the last mentioned road to maintain, that the defendants were not liable, the neglect being attributable to the Saratoga and Schenectady road.

In a note to this case by Chief Justice REDFIELD, in his treatise on railways, he says, perhaps the only question in regard to the soundness of this decision is, whether both companies are not chargeable with negligence, the one for suffering the road to be used, and the other for using it, in that condition. Redfield on Railways, 420.

In the case before us, admitting it was the duty of the first party to the agreement to fence this road, they would be liable

for this injury had they been sued, there can be no question. By the agreement, the second party, the plaintiffs in error, undertook to use this road, defective as it was, and controlled the running of their trains upon it. The demands of public policy require that they should be responsible for all injury resulting from the use by them of the road while in such a defective condition. They knew, when they made the agreement, the road was not secure by fences against these accidents, and they took it knowing the risk.

The law requiring railroad companies to fence their roads was enacted for the public good; but if the doctrine contended for by the plaintiffs in error should prevail it might not be productive of good. A company not responsible in damages might lease their entire road unfenced, to another company perfectly responsible, but who could claim immunity for the destruction of property by their trains, from the fact that they were not the owners of the road. *Pro hac vice*, they must be deemed the owners, and they controlled the powers that did the injury.

The view taken by the Supreme Court of Vermont in the case of *Clement* v. *Canfield*, 28 Vt. 302, is in accordance with the view we have presented, and meets our approval. Justice and the public good alike demand that a responsible party using the unfenced road of another company shall be liable for all damages resulting from the use of its own motive power upon it. The judgment must be affirmed.

*Judgment affirmed.*