Henry McGrath, Appellant, *v.* The New York Central and Hudson River Railroad Company, Respondent.

In an action against a railroad corporation to recover damages for injuries resulting from a collision at a street crossing, evidence that a flagman had always been kept at the crossing, and that he was absent at the time of the accident, is competent as bearing upon the question whether, under all the circumstances, defendant ran and managed its train with the requisite care and prudence. (Earl, J.; Rapallo, J., concurring.)

The competency of the evidence is not affected by the fact that defendant was not the owner of the road over which it was running its train.

So far as the question of liability for negligence is concerned, a corporation running its trains over the road of another company is bound by the same laws and ordinances which bind the owner.

So also in such case a municipal ordinance properly passed and promulgated requiring a flagman to be stationed at all street crossings is competent as evidence.

A violation or disregard of the ordinance, while not conclusive proof of negligence, is evidence upon that subject to be submitted to the jury.

*McGrath* v. *The N. Y. C. and H. R. R. R. Co.* (59 N. Y., 468) distinguished.

- (Argued November 30, 1875; decided January 18, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department in favor of defendant, entered upon an order denying a motion for a new trial and directing judgment on a verdict.

On the 13th day of March, 1871, defendant was running a train on a track belonging to the Rensselaer and Saratoga Railroad Company in the city of Albany. Plaintiff was driving a pair of horses attached to a lumber wagon upon Colonie street in said city, which is crossed by said track. As he was crossing the track the wagon was struck by said train and plaintiff was injured.

Upon the trial plaintiff offered to prove that there was always a flagman at the crossing, but that he was absent at the time of the accident. This was objected to by defendant's counsel and excluded, to which plaintiff's counsel duly excepted.

Plaintiff also offered in evidence an ordinance of the city of Albany requiring a flagman to be stationed at every street crossing. This was objected to and excluded, and plaintiff's counsel duly excepted. The jury rendered a verdict for the defendant. Exceptions were ordered to be heard at first instance at General Term.

*Amasa J. Parker* for the appellant. It was error to exclude evidence of the established practice of keeping a flagman at the crossing, and of his absence at the time of

the injury. (*Ernst* v. *H. R. R. R. Co.*, 39 N. Y., 61; *Grippen* v. *N. Y. C. R. R. Co.*, 40 id., 45; *Beisiegel* v. *N. Y. C. R. R. Co.*, 14 Abb. [N. S.], 29; *Teller* v. *N. Y. C. R. R. Co.*, 2 Abb. Ct. App. Dec., 458; 111 Mass., 136; *Parker* v. *R. and S. R. R. Co.*, 15 Barb., 315; 1 Redf. on Railways, 618, § 142, note 8; id., 571, note 8; 2 id., 303, sub. 5, 5th ed.; *Tracy* v. *T. and B. R. R. Co.*, 38 N. Y., 433; *Clement* v. *Canfield*, 28 Vt., 302; 55 Barb., 529; *Burchfield* v. *No. C. Co.*, 57 id., 589; *Webb* v. *Portland Co.*, 57 Me., 117, 135; 28 Vt., 302; *M. Cent. Co.* v. *Kanouse*, 39 Ill., 272; *Allyn* v. *B. and A. R. R. Co.*, 105 Mass., 77; *Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y., 528; *Webster* v. *H. R. R. R. Co.*, 38 id., 260; *Carpenter* v. *Cent. Park R. R. Co.*, 11 Abb. [N. S.], 416.)

*Samuel Hand* for the respondent. Evidence as to the custom of keeping a flagman at the crossing and his absence on this occasion, and as to the city ordinance in relation to a flagman, was properly excluded. (1 T. & C., 243, 246; *Gorton's Case*, 45 N. Y., 660; *McCall Case*, 54 id., 61; *Weber Case*, 58 id., 451; *Baxter Case*, 41 id., 302; *Haven's Case*, id., 296; *Weber* v. *N. Y. C. R. R. Co.*, 58 id., 458, 460; *Beisiegel* v. *N. Y. C. R. R. Co.*, 40 id., 9; *Grippen* v. *N. Y. C. R. R. Co.*, id., 34; *Schwartz* v. *H. R. R. R. Co.*, 4 Robt., 347.)

Earl, J. Upon the first trial of this action, it was shown that the Rensselaer and Saratoga Railroad Company had always kept a flagman at the crossing where the accident under consideration happened, but that he was absent at the time of the accident; and the court charged the jury that these facts might be considered by them upon the question of defendant's negligence. Upon appeal to the General Term, this charge was held to have been erroneous, and a new trial was granted. (1 S. C. [T. & C.], 243.) Upon the new trial, the plaintiff, against the objection of the defendant, was permitted to prove the same facts upon the question of the

plaintiff's negligence. The plaintiff recovered, and upon appeal to the General Term, the evidence thus given was held to be competent. But upon appeal to this court, it was held to be incompetent for the purpose for which it was received, and a new trial was granted.[*] Upon the third trial, the plaintiff offered again to prove the same facts, and, generally, that there was no flagman at the crossing at the time of the accident, and this evidence was excluded. The main question for our consideration upon this appeal is, whether this evidence was competent for any purpose. The sole question decided upon the former appeal to this court was, that the evidence was not competent upon the question of the plaintiff's negligence. That decision proceeded upon the ground that no negligence or omission of duty upon the part of the defendant could absolve the plaintiff from the duty of using his senses to avoid the danger. The question whether such evidence was competent, as bearing upon the defendant's negligence, was not then before this court, and was not decided; and I believe the question has never yet been decided by this court. So far as I can discover, there is no reported case in which such evidence has been excluded. The evidence has been received, and the question of its effect has been raised upon the charge to the jury. In the case of *Biesiegel* v. *The New York Central Railroad Company* (40 N. Y., 9), the absence of a flagman at the crossing was proved, and the judge charged the jury that if the crossing was in such a populous part of the city, " that it was due to public safety, and, in common prudence, in view of the high powers exercised by the company, passing at the high speed at which they run their trains, that they should keep a flagman at that point ; that if they thought it was an omission of a precaution, which, in ordinary prudence and care, the company was called upon to practice, then it was negligence to omit that duty." Five of the judges concurred in holding that this charge was erroneous, but no question was made by any of the judges that the evidence as to the absence of

[*] 59 N. Y., 468.

the flagman was competent, and it cannot be inferred from any thing contained in any of the opinions that any of the judges thought it to be incompetent. On the contrary, Judges James, Woodruff, Mason and Hunt were manifestly of opinion that such evidence was competent. The only point decided was, that it was not the duty of a railroad company to keep a flagman at a crossing, and that it was not chargeable with negligence for the omission of any such supposed duty. It was not decided that the absence of a flagman at a crossing could not be proved as one of the circumstances existing at the time and place of the accident. In the case of *Grippen* v. *The N. Y. C. R. R. Co.* (40 N. Y., 34), the question again arose upon the charge of the judge. The absence of a flagman was proven, and the judge left it to the jury to determine whether a flagman at the crossing, " as a measure of proper caution, was or not required of the defendant," and this was held to be error by four of the judges. Judge Woodruff writing the opinion, in which three of his brethren concurred, was clearly of opinion that such evidence was competent to be left to the jury, not upon the question of defendant's duty to keep a flagman at the crossing, but upon the question of the care and prudence with which the defendant ran and managed its trains at the time of the accident. In *Weber* v. *The N. Y. Cen. and Hud. R. R. R. Co.* (58 N. Y., 451), the question also arose upon the charge of the judge. It appeared that no flagman was stationed at the crossing, and the judge charged the jury that there was no law making it the duty of the defendant to have a flagman, and that it was not negligent in it not to have one at the street crossing. This charge was approved by Judge Allen, writing the opinion, and the learned judge says that " the duty of posting flagmen, or having servants and agents, or placing gates or other obstructions, or of giving special or personal notice to travelers, at railway crossings, can only be imposed by the legislature," and that " juries may and must say whether a railroad company sought to be charged for alleged negligence, has in the operation of its trains, the

use of the road tracks, and the conduct of its business, used that degree of care and prudence which the circumstances and its obligation to others required, but beyond this they cannot go. Negligence cannot be predicated of omissions to do something outside of and beyond this." There is no intimation, however, in the opinion, that the presence or absence of a flagman at a crossing is not one of the circumstances proper to be proved as bearing upon the degree of care and caution with which a railroad runs its trains.

Judge Andrews, in his opinion upon the former appeal of this case, reiterated the doctrine that the law does not make it the duty of a railroad company to place a flagman at street crossings to warn travelers, but he did not hold that the evidence of the presence or absence of a flagman might not be proved in any case as bearing upon the negligence of a railroad company sued for damages. I believe it has been the common practice to receive this class of evidence in such cases as this, and there are many reported cases in this country and in England where it has been received, and no case has fallen under my observation where it has been held to be improper.

Where there has been a collision at a railroad crossing, with a traveler upon the highway, and the railroad company is sued for negligence in causing the collision, its negligence is made out generally by proving all the circumstances surrounding the transaction, and submitting them with proper instructions to the jury. It may be proved that the collision took place in the night time, in a rain storm, that the train was running fast or slow, with or without head lights, that it was backing or going forward, that it was running in a city in a crowded thoroughfare, or in the country, that there were many or few tracks, that there were obstructions making it impossible to see the train before the crossing was reached. These circumstances are proved, not to impose upon the railroad company any duty which the law does not impose, or any duty to do any acts collateral to the running and management of its trains in a lawful manner upon its road, but as bearing upon

the question of the manner in which it has run and managed its train. A different degree of care may be required in running trains in the dark and in the day-light, in city and country, when there are obstructions and no obstructions near crossings. It would be error for a judge to charge a jury that it is the duty of a railroad company to remove obstructions near its road obstructing the observation of travelers at a crossing, and yet it would not be error to receive proof of the presence of such obstructions. For the same reason it would be error for a judge to instruct a jury that it is the duty of a railroad company to keep a flagman at a crossing or to submit to the jury the question whether it ought to have kept a flagman there; and yet it would not be error to receive evidence of the absence of a flagman. There are many cases where trains can be run with greater speed, without negligence, if a flagman is kept at crossings, or other appropriate measures taken to warn travelers of the approach of trains. And, in the absence of flagmen, railroad companies may, in the exercise of proper care, be required to run their trains slower, or to take other precautions to protect travelers; the question in all cases being, not whether it was their duty to do any of the collateral things to warn travelers, but whether, under all the circumstances of the case, it run and managed its train with the requisite care and prudence. To illustrate more fully the clear distinction which I claim to exist as to the use that may be made of such evidence: In a given case the evidence of the absence of a flagman is received, and the judge charges the jury that if they find that it was the duty of the defendant, under the circumstances, to keep a flagman at the crossing, the omission of that duty is negligence which may make the defendant liable. Under such a charge that duty is made the central and controlling fact; and if the jury should find that the defendant had run its train with the greatest care in other respects, and that it was guilty of no other negligence, and yet should find that it had omitted that duty, they could find a verdict against the defendant. Under the laws which make it the

duty of railroad companies to put sign-boards, and ring the bell, and blow the whistle at railroad crossings, an omission of that duty, if the jury found that it contributed in any way to the accident, would make the defendant liable, no matter how careful it may have been in running and managing the train, and in all other respects. Such effect is given to that omission of duty because the law imposes the duty and enacts the consequence for its omission. Under such a charge as I have supposed, the jury is put in the place of the legislature, and its decision as to the duty has the force of statute law; and hence such a charge has properly been condemned by the courts of this State. In another case the evidence is received and the jury is charged that the defendant owed no duty to any one to keep a flagman at the crossing, but that its sole duty to travelers upon the highway was to run and manage its trains with proper care, so as not to injure them in the exercise of their lawful rights; and that upon the question whether such care was exercised, they must consider all the circumstances existing at the time and place of the accident, and among them the fact of the absence of a flagman at the crossing. In such a case a proper use is made of the evidence, and the charge is liable to no just criticism. If the jury find such care was exercised, they will find for the defendant, whether there was a flagman at the crossing or not.

It must be conceded that a railroad company charged with negligence at a road crossing, may give evidence to show that they kept a flagman there to warn travelers; in such case the plaintiff may controvert this evidence and show that no flagman was there. The judge may charge the jury that the presence of a flagman, if they find one was present, must be considered by them upon the question of the care with which defendant run and managed its trains. Can it properly be said that they may not consider the absence of a flagman, if they so find upon the same question?

I am, therefore, of opinion that the evidence rejected ought to have been received, upon the question of defend-

ant's negligence; and in reaching this conclusion I have taken no account of the city ordinance, or of the fact that the defendant did not own the road upon which its train was running at the time of the accident. Without reference to these considerations the plaintiff was entitled to this evidence. Our decision proceeds upon the idea that the defendant was bound to run and manage its trains in the streets of a large city with proper care, whether it owned the road or not, and that, as bearing upon the question of care, the absence or presence of a flagman is one of the circumstances to be considered.

But there is another error for which the judgment should be reversed. Upon the trial the plaintiff offered to prove the ordinance of the city of Albany, which required a flagman to be stationed at every street crossing, and the evidence was excluded. It is not questioned that the ordinance was properly passed and promulgated. It was, therefore, in the nature of a law to be observed within the city by all railroad companies. If the defendant had owned the track upon which its train was running at the time of the accident, it has been decided that the evidence would have been competent. (*Jetter* v. *N. Y. and H. R. R. Co.*, 2 Abb. Ct. of App. Dec., 458; *Beisegel* v. *The N. Y. C. R. R. Co.*, 14 Abb. Pr. [N. S.], 29; *Lane* v. *Atlantic Works*, 111 Mass., 136.) The object of the ordinance was the security and protection of the travelers upon the streets. The defendant must be held to have known of its existence, and all persons within the city were bound to take notice of it as if it had been a law regularly enacted by the legislature. It either, in terms, applied to the defendant, although it was using a road owned by another company; or the defendant may have been guilty of some negligence in running its train upon the road when the owners thereof neglected the duty imposed upon it — to keep a flagman at the crossing. While using the road it was bound, so far as concerns the question of liability for negligence, by the same laws and ordinances which bound the owner. (*Webb* v. *Portland and K. R. R.*

*Co.,* 57 Maine, 117; *Clement* v. *Canfield,* 28 Vt., 302; *Michigan Central* v. *Kanouse,* 39 Ill., 272.)

A violation or disregard of the ordinance, while not conclusive evidence of negligence, is some evidence upon the question to be submitted to the jury, with all the other evidence.

Judgment reversed and new trial granted, costs to abide event.

RAPALLO, J., concurs; CHURCH, Ch. J., and FOLGER, J., concur on last ground; ALLEN, J., did not vote; MILLER, J., did not sit.

Judgment reversed.