HEBERT v. PRESIDENT, ETC., OF THE DELAWARE & H. CANAL CO.

*(Supreme Court, General Term, Third Department.  November 30, 1891.)*

MASTER AND SERVANT—NEGLIGENCE—RULES FOR PROTECTION OF SERVANT.

Plaintiff's intestate, (defendant's employe,) charged with the duty of making up trains in defendant's railroad yard, was killed, while riding on the platform step in front of defendant's yard-engine, by collision with a loaded wagon at a planked wagon-way crossing used by defendant for carrying material to its repair-shops. At that crossing there were six tracks, five of which were used for storing loaded cars, and it was the duty of the deceased to divide the cars there so as to keep the way open for the passage of wagons.  The only claim of negligence on the part of defendant was that intestate's view of the approaching wagon was obstructed by cars standing near the crossing, and that defendant should have made a rule fixing the distance from the crossing at which the divided cars should be left.  *Held*, in the absence of expert testimony showing what rules were necessary and proper, that a judgment of nonsuit against plaintiff should not be set aside.

Appeal from circuit court, Rensselaer county.

Action by Caroline Hebert, administratrix of Noe Hebert, deceased, against the Delaware & Hudson Canal Company.  From a judgment of nonsuit directed by the court, plaintiff appeals.  Affirmed.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Lansing & Cantwell,* (*James Lansing,* of counsel,) for appellant.  *Edwin Young,* for respondent.

MAYHAM. J.  On the 14th of May, 1889, between 3 and 4 o'clock in the afternoon, the plaintiff's intestate was killed while in the employ of the defendant, at its railroad yard in the village of Green Island, by the collision of one of the defendant's locomotive engines, on which he was riding, with a loaded wagon.  At the time of the accident, and for 10 years previous thereto, the deceased had been the foreman of one of the gangs of men in this yard, charged with the duty of making up trains, and was familiar with all of the tracks in the same, and with the methods of conducting the work of the railroad at that place.  Through this yard, which is nearly a mile in length, the main track of the defendant's railroad runs in a northerly and southerly direction.  On the east side of this main track are three side switch tracks, and on the west of the main track, between it and the repair-shops, are two side tracks, making in all six tracks, nearly parallel, running through or partly through this yard.  At nearly right angles with those tracks is a planked wagon-way from the roadway, running easterly and westerly across these railroad tracks to the repair-shops.  This planked wagon-way is 15 feet wide, and over it is carted by wagons and teams material from the road to the repair-shops, for the use of the defendant in the repair-shops.  The side tracks on either side of the wagon-way are used for storing cars while waiting in the yard, and trains so stored or in waiting are separated or broken at this wagon-way and these side tracks by the switchmen or gangs of men employed in the yard for switching cars and making up trains.  It was part of the business of the deceased, as foreman of a gang of switchmen, to locate these stored cars, and to see that the wagon-way was left open, and with this duty, and the manner in which it was performed by himself and the other gangs of men, who were his co-employes and fellow-servants, he was thoroughly familiar.  The distance between these railroad tracks is from 6 to 6½ feet. The engines used by the defendant's gang of yardmen for switching have no pilots or tenders.  There were four steps on the engine on which the deceased was riding,—one on either side, at the front and rear ends, attached to a platform about 12 inches wide and about 2½ feet long at either end of the engine. The couplers were accustomed to ride on the front or rear platform, wherever they got on; when they had to couple in front, on the front platform, and when in the rear, on the rear platform.  The cab on the engine was used for men to stand in and for coal.  There are two platforms at each end of the

engine, of the size above described, to each of which a step is attached, and between them and either end of the engine are protecting timbers, called "dead-woods." The steps or platforms are to stand on to couple cars. At the time of the accident deceased was riding on the front end of the engine, upon one of the front platforms or steps. The engine was on the main track, going north. There were box-cars standing on the track next westerly of the main track, filling that side track for about 800 feet south of and extending up to near the planked portion of the wagon-way. As the engine was proceeding north at a rate of speed of about four to six miles an hour, it collided with the loaded wagon going westerly over the planked wagon-way, and the plaintiff's intestate was instantly killed. It does not appear to be claimed by the appellant that the defendant was guilty of contributory negligence in the construction of its locomotive engine, machinery, or track, for which it can be held liable in this action; and the case shows that the engine used in doing the switching and making up the trains in the yard is of the character usually in use by the railroads for this kind of work; nor does it appear that any claim is made by the plaintiff, nor does the evidence disclose, that the defendant employed incompetent persons for the performance of this work. But it is insisted that the defendant was negligent in not making and promulgating rules governing the manner of the performance of the work in this yard, and particularly in not making and promulgating a rule fixing the distance from this planked wagon-way within which cars standing on these side tracks must not be left, and that that question was one of fact for the jury. It is not quite clear from the decisions where the power is lodged of determining in what case rules should be promulgated, and, when rules are made and promulgated, whether or not they are sufficient. It would seem hazardous, in the case of the management of a great railroad corporation, to intrust that power either to the court or jury. The management of the intricate and complex systems of railroading is a business requiring great skill and knowledge of that subject, acquired only by long experience and careful observation of persons engaged in that business. To leave it to a court or jury to speculate as to what methods should be adopted in a given case for the protection of life or property, without the evidence of skilled and experienced witnesses upon which to act; to say whether in a given case a railroad company had adopted proper and prudent and safe rules and regulations for the safety of the public or of its employes,—would be practically to take the control out of the hands and power of the company, and intrust it to the inexperience and caprice of a court or jury. All will agree that these corporations should make such regulations for the management of their trains as will best promote the safety of the people. But it is manifest that the best and safest methods of management can only be ascertained by courts and juries through the medium of testimony and evidence of expert and experienced witnesses. In this case there was no testimony offered by the plaintiff showing what rules were necessary and proper to be adopted by the company for the management and control of the foremen of these gangs of switchmen and their men. All the evidence upon that subject is that no rules had been adopted and promulgated by the company on this point. Without evidence upon this matter, we do not see how the jury could reach any correct conclusion as jurors in an action. It is true, the jurors might, without evidence, have speculated upon their own judgment, or perhaps their own knowledge of railroading, and reached a verdict. But this is not the method by which conclusions should be reached or verdicts rendered by juries. In *Abel* v. *President, etc.*, 103 N. Y. 581, 9 N. E. Rep. 325, evidence was given of a system of rules in force by railroads for the protection of repairers while working under cars on the track, and the court in that case held that it should have been submitted to the jury whether the rules adopted by the defendant were as efficient as those adopted by other roads on the same subject. That, in principle, is not unlike

the rule that has obtained upon the question of the safety of machinery, when it is held that where an employe is injured by defective machinery it may be shown that safer or better machinery is in use, and the jury may determine whether or not it was negligence in the employer not to have adopted it.

But the *Case of Abel, supra,* and kindred cases, do not go to the length of holding that, where there is no evidence of a better method, the jury may, upon their judgment or knowledge, assume that there is, and hold the defendant liable on that assumption.   In the case at bar, there being no evidence of any rules adopted either by the defendant or any other company under similar circumstances, the jury would have been called upon to make rules for the defendant, and then hold that the defendant was liable for not having adopted and acted upon them in this case.   In *Donnegan* v. *Erhardt,* 119 N. Y. 468, 23 N. E. Rep. 1051, the injury occurred to the plaintiff through the defendant's failure to perform a clear statutory duty, in not keeping its road fenced, by reason of which a horse strayed upon the track, with which the train collided, and an employe was injured; and the court held that the statutory obligation to maintain fences is for the protection of the employes and passengers, as well as for the owners of animals straying upon the track.   We do not see that this case comes within the principle decided in the one last referred to.   There is no evidence in this case that the cars left upon the side tracks were placed in such close proximity to the wagon road as to shut off or obstruct the line of vision of the deceased while on the engine by any order of the yard-master, or any one having control, superior to the deceased.   The evidence shows that they had been left in similar position by the deceased as foreman of a gang of brakemen, and also by other foremen of similar gangs, and that that custom had prevailed for the entire 10 years that the deceased had held that position.   If, therefore, it was negligence to leave them in that position, that negligence was either the act of the deceased himself or of his fellow-servants, and in either event no liability would attach to the defendant.   In the one case it would be the contributory negligence of the deceased himself; in the other, that of a fellow-servant.   In either case the rule that the defendant would not be liable is too well settled to require the citation of authorities.   We are therefore led to the conclusion that the nonsuit in this case was right.   Judgment affirmed with costs.   All concur.