### SHEPARD *v.* NEW YORK CENT. & H. R. R. CO.

*(Supreme Court, General Term, Fifth Department.  March, 1892.)*

1. INJURY TO BRAKEMAN—DUTY TO ADOPT RULES—PROVINCE OF JURY.

In an action against a railroad company to recover damages for the death of an employe, occasioned by the absence of signal lights on empty cars standing on a siding, it was error to submit to the jury the question whether or not it was the duty of defendant to adopt rules requiring signal lights to be placed on cars so situated, in the absence of evidence that such rules would have been practicable, that other companies had adopted the same, or that the cars upon such sidings were frequently shifted.

2. EXECUTION OF CONTRACT—FAILURE TO READ BEFORE SIGNING.

An infant railroad employe's father testified that he signed an agreement with the company authorizing it to pay the son his wages, and releasing it from all claim for injuries that might be sustained by the son "from any cause," without reading it, in ignorance of its contents, and believing that it related to the wages only; but that he had ample opportunity to read it. *Held,* that it was error to submit to the jury the question whether it was executed under such circumstances as to bind him.

Appeal from circuit court, Ontario county.

Action by Charles H. Shepard, administrator of Herbert M. Shepard, deceased, against the New York Central & Hudson River Railroad Company, to recover damages for the death of decedent while in defendant's employ. From a judgment entered on a verdict for plaintiff for $3,527.22, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Henry S. Redfield,* for appellant.  *E. W. Gardner,* for respondent.

LEWIS, J. This action was brought by the plaintiff, as administrator of the estate of his son, Herbert M. Shepard, deceased, to recover damages of the defendant for causing the death of Herbert, through the alleged negligence of the defendant, on the 16th day of November, 1889, at Stanley station, in the county of Ontario. The deceased was, at the time he was killed, a brakeman in the employ of the defendant. He arrived at Stanley station upon a train of cars from Sodus Bay on the night of the 16th day of November, arriving after dark. The train was in charge of Edwin L. Mason, its conductor. After depositing the cars composing his train upon the proper switches, Mason ran down the siding, known as the "I" siding, with an engine and a combination car. The car was pushed by the engine. The deceased was standing upon the front end of the car, for the purpose of giving signals to

the engineer. The car came in collision with some cars standing upon the "I" siding, causing the death of the deceased. There was a rule of the company in force at the time requiring that trains coming in on the Sodus Bay branch of the road should put their empty cars on "E" siding, and loaded cars on "F" siding, and, when the "E" siding was full, to put empty cars on "I" siding. The "E" siding had capacity for 31 cars only. On the afternoon of the day in question, Mr. Kendall, another of defendant's conductors, arrived at the Stanley station, with a train composed of 21 empty cars. There were, at the time of his arrival, upon the "E" siding, 20 cars; and, there not being room upon the "E" siding to accommodate all of his cars, by direction of the station agent he placed his entire train of empty cars upon the "I" siding. The deceased's train collided with the cars thus placed on "I" siding. It was quite dark at the time of the accident, and Mason, the conductor of the deceased's train, had not been informed by any one, and did not know, that the cars were upon "I" siding at the time. There was no signal upon the "I" siding cars, in the way of lights or otherwise.

It is contended by the plaintiff that the defendant was guilty of negligence in placing cars upon the "I" siding in violation of its rules, and was also negligent in failing to inform the conductor that they were there, and was also guilty of negligence in omitting to place upon the cars a light or signal, to give warning of their presence on the siding. The rules of the company provided for placing cars upon the "I" siding only when "E" siding was full of cars. When the train of cars placed upon the "I" siding arrived, there was not sufficient room upon "E" for all of the cars. Had a sufficient number of cars of Kendall's train been placed upon "E" siding to fill it, there would have still remained 10 cars, which by the rules of the company should have been placed upon the "I" siding; and had the car in which the deceased was riding collided with 10 cars, instead of 21 cars, we assume that the result to him would have been the same. So that the failure of Kendall to comply with the rules of the company, by filling up "E" siding, does not seem to be of much importance. The respondent relies mainly upon defendant's neglect to place lights upon the "I" siding cars to sustain the judgment. His contention is that the defendant was guilty of negligence, in that it failed to adopt a rule requiring that cars occupying tracks that were to be used should have placed upon them in the nighttime some light or signal to give notice to its employes of their presence. It was shown upon the trial that the defendant had never adopted such rule or regulation. There was no evidence that any such rule had ever been adopted by any railroad company, or that such a rule would have been practicable in the handling of cars. There was evidence tending to show that the cars upon these various sidings were frequently moved and changed.

The learned trial justice charged the jury, among other things, that "the making of suitable rules and regulations is imposed by law upon the company, and it is a duty which it cannot escape from, any more than it can escape from the duty of furnishing safe cars for the men to ride in. Were the rules at this place for the switching of cars and the making up of trains suitable and proper? The written rules have been read to you. It is claimed by the plaintiff's counsel that, if the company was in the habit of putting its cars upon 'I' track, and leaving them there on a dark night, that the rules should have required some signal to have been hung out upon the end of the car standing upon the 'I' track, or the conductor should have been notified in some way that the cars were upon 'I' track. Whether it was a proper regulation not to do so is a question of fact for you to determine. If it was not a proper regulation, and by reason of that omission this accident occurred, then the railroad company is liable." The defendant's counsel duly excepted to this part of the charge of the court, and contends that the court erred in so charging. It is obvious that this portion of the charge

of the court had an important effect upon the minds of the jurors in arriving at their verdict; and, if the charge in this regard was erroneous, a new trial must be granted. As we have seen, the case was barren of any evidence that any such rule or regulation had ever been adopted by any railroad company, or that it was a regulation that could be practically observed by the defendant in the management of its business. Under the charge of the court, the jurors were permitted to speculate upon a subject about which they had no information, so far as the evidence in the case gave them light. It was decided in *Grippen* v. *Railroad Co.*, 40 N. Y. 41; *McGrath* v. *Railroad Co.*, 63 N. Y. 528; *Houghkirk* v. *President, etc.*, 92 N. Y. 220, —that it is reversible error for a court to submit to a jury the question whether a railroad company should have had a flagman at a particular railroad crossing. It was said by Judge FINCH in *Houghkirk* v. *President, etc.*, *supra:* "The charge left it to the jury whether the company was or was not bound to have a flagman at the crossing, and whether the defendant should have had one there, and so permitted the jury to predicate the negligence upon the omission. * * * They [the jury] must have gone to their deliberations with the final impression upon their minds that they were at liberty to find that the defendant ought to have stationed a flagman at the crossing, and that omission constituted negligence upon which a verdict could be founded. For this error we think there should be a new trial." It was decided in *Larow* v. *Railroad Co.*, (Sup.) 15 N. Y. Supp. 384, that it was error in the court in its charge to leave it to the jury to determine whether it was reasonable to require the railroad company to promulgate a rule forbidding entrance on a switch when another engine and train were upon it, unless a signal is given, or notice sent to the employes of that train, and, if they found such a rule to be reasonable, they might find the company negligent; it not being shown that any other company had adopted such a rule, or what its practical working would be if adopted. *Hebert* v. *Canal Co.*, (Sup.) 16 N. Y. Supp. 561. These are general term decisions, and are in point. I am unable to distinguish the doctrine of these cases from the question presented here. In the flagman cases referred to, the jury were permitted to decide whether the company was not guilty of negligence in omitting to have a flagman at the particular station. In this case the jury was permitted to decide whether the defendant was negligent in not adopting a rule requiring a signal light to be placed upon a car stored upon a track. In the cases of *Ford* v. *Railway Co.*, 124 N. Y. 493, 26 N. E. Rep. 1101, and *Abel* v. *President, etc.*, 103 N. Y. 581, 9 N. E. Rep. 325, there was evidence that rules like those contended for had been adopted and applied by other companies.

The deceased was under age at the time he entered the defendant's employ. The plaintiff testified that the defendant asked him if he would be willing that his boy should go into the employ of the defendant, and that he consented; that before his son commenced work he brought to his father for his signature a paper stating that, "in consideration of the defendant giving employment to the son, the wages might be paid to the son, and he would make no claim upon the company therefor." It further stated: "And I further agree that I will make no claim upon said company for any injuries arising from any cause whatsoever that may be received by or happen to my said son while in the employ of the said company, either in the capacity above mentioned or in any other capacity." The plaintiff testified that when the instrument was presented to him for his signature his son stated to him that the company wished it, so that the wages might be paid to the son; that he did not read it, and was ignorant of its contents when he signed it. He, however, stated that it was presented to him by his son for his signature; that he had ample opportunity to read it, if he had chosen so to do, before executing it. There is no suggestion in the case that he was prevented from under-

standing its contents by any improper means on the part of the defendant. The defendant required his signature to the paper before it would give employment to the son; and we think that the plaintiff must be held bound by the agreement, and that it was error to submit to the jury the question whether it was executed under such circumstances as to bind the plaintiff. But whether the contract should be construed as including and covering any claim which the plaintiff might have against the defendant for negligently causing the death of the son may be doubted. The tenor of the decisions of the courts has been to give strict construction to such contracts, and not to allow their provisions to be extended too broadly. The main purpose of the contract apparently was to permit the defendant to pay the wages to the son as a matter of convenience, and the clause waiving any claim for injuries may very properly be limited so as to include only any damages which might arise in consequence of physical injuries to the son, not resulting in death. But it is not necessary to decide that question here, as we place our decision granting a new trial solely upon the error in the charge of the court to the jury touching the adoption of the rule in reference to signal lights. We assume that the evidence established the negligence of the defendant, and the freedom from negligence on the part of the deceased, as the case fails to state that it contains all of the evidence. The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.