JOSEPHINE VANDEWATER, as Administratrix, etc., Respondent, *v.* THE NEW YORK AND NEW ENGLAND RAILROAD COMPANY, Appellant.

*Railroad company — notice of trains approaching crossings — evidence — acquiescence in the use of a crossing imposes a duty — negligence.*

It is not necessarily the duty of a railroad company to maintain a flagman at crossings nor to remove obstructions to observation, although the absence of the former and the presence of the latter may always be proved upon the trial of an action brought to recover damages resulting from injuries sustained by reason of a collision with a train.

It may be an insufficient defense to such an action to prove compliance with the statutory regulations respecting signals. The giving of such signals does not, under all circumstances, relieve a railroad company from the imputation of negligence. It is bound to use ordinary precautions to avoid collisions.

Upon the trial of such an action proof was given that it was the custom of the railroad company to give warning of trains approaching the crossing, and it could be assumed that the plaintiff's intestate was familiar with such custom *Held*, that evidence that such custom was not followed at the time of the accident was admissible.

Where a crossing over the track of a railroad company has been used so long with the assent of such company that such acquiescence amounts to a license, a duty is imposed upon the company in respect to all persons using the crossing to exercise reasonable care in operating its trains so as to protect them from injury.

Although a railway company is not absolutely bound to ring a bell or blow a whistle upon the locomotive of a train approaching a crossing, yet it is bound to give notice and warning, and as to what notice and warning is sufficient the jury must determine. The fact that a bell was rung does not, in itself, establish the fact that the company used reasonable care.

APPEAL by the defendant, The New York and New England Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Dutchess on the 13th day of October, 1891, upon the verdict of a jury for $5,000, rendered at the Dutchess County Circuit, and also from an order denying the defendant's motion for a new trial made upon the minutes.

This action was brought by Josephine Vandewater, as administratrix, etc., of William P. Vandewater, deceased, to recover damages for the death of the plaintiff's intestate, who was killed while attempting to cross the defendant's railway at a farm crossing near Fishkill, by reason of the alleged failure of the defendant to give warning of an approaching train.

*W. C. Anthony*, for the appellant.

*Wood & Morschauser*, for the respondent.

DYKMAN, J.:

This action was here before upon an appeal from a judgment entered upon a verdict in favor of the defendant, and we affirmed the judgment.

That judgment was reversed by the Court of Appeals, because the trial judge charged the jury that it was the duty of the defendant to blow the whistle or sound the bell eighty rods before reaching the highway, and continue it at intervals, until the crossing was passed, and if it failed to do that, and the accident at the farm crossing was occasioned by that omission, the jury might find a verdict of negligence, the same as if the provision of the Railroad Act imposing an obligation to sound the bell or blow the whistle eighty rods before reaching the crossing had never been repealed.

It was also decided that the provision of the Penal Code devolving the duty of giving such signals upon the engineer imposed no duty upon the railroad company, and, therefore, the failure to give such signals cannot, as a matter of law, be regarded as a neglect of the defendant.

In the opinion of the Court of Appeals (135 N. Y. 588) Judge PECKHAM said: " Of course the companies still owe a duty to the

public at such crossings as elsewhere.   That duty is to run their trains with care and caution, and when they cross such roads it may well be that the failure to give due warning by whistle or bell, or in some other way, would be held under all the circumstances to be a failure to manage and run their train with proper care and caution for which they would be liable to a party injured if otherwise entitled to recover. Even when compelled by statute to make such signals, it is not necessarily a defense in all cases to prove that they were made.   The making of the signals is the least the company can do, and in a given case it might not be enough.   *   *   *

" It may be that evidence of the omission to give any signals for the highway crossing would not be admissible as bearing upon the question of defendant's negligence in running its trains at the farm crossing 2,000 feet distant.

" There are cases where evidence has been admitted showing the absence of customary signals at the places where usually they had been given, for the purpose of proving negligence on the part of the company.   Whether this was a case where evidence of this nature should be admitted in favor of this plaintiff, and with regard to the highway crossing is a question not now necessary to decide.

" If the defendant were guilty of negligence in the manner of running its train over the farm crossing, it would be liable to a plaintiff otherwise entitled to recover.   Upon a new trial all the facts can be shown which would enable the court or the jury to determine the question."

The second trial was before a judge without a jury, and he decided in favor of the plaintiff, and from the judgment entered upon such decision the defendant has appealed to this court.

The trial judge found substantially as follows : That the defendant is a foreign corporation and is the owner of the New York and New England railroad ; that along the line of its road it has a depot located at Fishkill village, at which depot the defendant's trains were accustomed to stop, going in either direction, and that the defendant, since January, 1890, and prior thereto, established a custom of causing each and every one of its engines to blow its whistle or ring its bell upon its approach to that depot in either direction, whether the train stopped there or not.   That there is at right

angles to such railroad a farm crossing, known as White's crossing, which runs north and south, while the railroad from said depot toward said crossing runs in a westerly direction in a straight line, and that White's crossing is located about 1,400 feet westerly from that depot. That the road of the defendant over the said crossing runs westerly through a deep cut or excavation from near said station to and across the farm crossing. That by reason of said excavation there were high banks on either side of the defendant's road, over which the farm crossing passed, the same continuing nearly from Fishkill station to and across the said farm crossing. That upon the southerly side of the defendant's road and upon and along the edge of the said bank, on the 16th day of August, 1890, and for a long time prior thereto, there were growing and permitted to remain large quantities of brushwood and trees, which, together with the banks aforesaid, interfered with and obstructed the view of people passing over and along said farm crossing, which was on a level with the roadbed of the defendant, and obstructed the view of any train thereon running toward the west; that those obstructions were of such a character that they could have easily been removed by the defendant, and upon such removal the view of an approaching train from the east would be much better, and that the removal of such obstructions would render it safer for persons crossing said railroad at said farm crossing. That the defendant had upon its road a train known as the "pay car;" that they had established the custom of running the train on Friday of each week. On the 16th day of August, 1890, on Saturday, the defendant ran its pay car, being an unusual day to run the same, and it was run from Hopewell Junction to White's crossing at an unusual time and at an unusually high rate of speed, being at least forty-five miles an hour, which was a much higher rate of speed than trains were run or had been run at that time by the defendant on said railroad, without giving any alarm or sounding any whistle or ringing any bell at its approach to said crossing, or at its approach to said depot. That the defendant's road consists of a single track, and from the Fishkill depot to White's crossing the view of a person upon an engine is unobstructed from the depot to beyond the crossing, so that an engineer running a locomotive could see any attempt of a person to pass over that crossing with a horse and wagon before

such person could observe the engine. That on this occasion the engineer failed to look, and did in a negligent and careless manner run said locomotive without properly observing any danger ahead. That White's crossing is a farm crossing, and was legally placed there and permitted to be there by the defendant, who had full knowledge of its existence and the conditions surrounding it, and the crossing was used by persons residing on each side of the crossing, and was also used by other persons to reach a creek near by, all of which the defendant admitted, and of which it had full knowledge.

That on the 16th day of August, 1890, the defendant ran a train consisting of one locomotive and a pay car as mentioned above, which car at that time was going toward the west and ran the same toward said Fishkill depot and in the direction of the crossing, and over the crossing without giving any warning or sounding any whistle or ringing any bell or making any noise to attract attention, and that the same was run by the defendant in such a careless, negligent manner as to strike the said William P. Vandewater while going over the said crossing and instantly kill him. That the deceased upon approaching and at the time he attempted to go over the said crossing, looked in both directions, and listened for the approach of any train, and attempted in a proper and careful manner to cross the railroad track, and that he was struck by the train without any negligence or carelessness on his part while approaching the crossing in a proper, prudent and careful manner. That the running of the train by the defendant at an unusual time, and at such a high rate of speed, and approaching the depot without sounding the customary alarm, and approaching the crossing, knowing the conditions and obstructions there existing, with such a train, was such negligence and carelessness as to cause the death of the deceased, and that the same did cause his death. That the deceased was killed by reason of the negligence and carelessness of the defendant, and the plaintiff has been damaged by the death of her said husband in the sum of $5,000, and has suffered pecuniary loss in that amount resulting from his death.

As conclusions of law the judge found and decided that the defendant was bound under the circumstances to use ordinary care and prudence which it failed to do on this occasion; that the plaintiff's intestate was not guilty of contributory negligence.

Under all the circumstances surrounding the occurrence which resulted in the death of the plaintiff's intestate, the running of the train at an unusual time, at such a high rate of speed, without sounding the customary alarm, and approaching such crossing where the plaintiff's intestate was killed knowing the conditions and obstructions there existing, was carelessness and negligence, and it was such carelessness and negligence that caused the death of plaintiff's intestate without any fault or negligence on his part. That the plaintiff has been injured and suffered pecuniary loss in the sum of $5,000 by the loss of her husband. The plaintiff is entitled to judgment for the sum of $5,000, together with interest thereon from the 16th of August, 1890, being the day of the death of the said deceased.

A serious question in this case is whether evidence to show the absence of the customary signals at the station where such warnings are usually given was properly admitted. The Court of Appeals leaves this question in abeyance, but states, as we have seen, that if the defendant was guilty of negligence in running its trains over the farm crossing it would be liable to a plaintiff otherwise entitled to recover.

Inasmuch as there is small ground for attributing negligence to the deceased, the question is of paramount importance upon this appeal.

In an action of this character it is usual and proper to prove all the facts and circumstances surrounding the occurrence, not to impose any duty upon the company which the law does not enjoin, but to lay before the jury the manner of operating the road. It is not the legal duty of a railroad company to maintain a flag at crossings, nor to remove obstructions to observation, and yet the absence of the former and the presence of the latter may always be proven upon the trial as bearing upon the general question involved. (*Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 518; *McGrath* v. *Same*, 63 id. 528.)

So, conversely, it may be an insufficient defense to prove compliance with the statutory regulations respecting signals. Giving such signals does not under all circumstances relieve the company from the imputation of negligence. They are bound to use ordinary pre-

caution to avoid collisions. (*Thompson* v. *N. Y. C. & H. R. R. R. Co.*, 110 N. Y. 636; *Harty* v. *Railroad Co.*, 42 id. 468.)

In the case of *Casey* v. *The Railroad Company* (*supra*) proof was admitted to show that the defendant, previous to the accident, had been in the habit of keeping a flagman at that place, and that he was not there at the time, and it was held competent proof. We think that case analogous to this. Here the proof is that the custom was to give alarms on approaching the station, and the custom was not pursued at the time of the accident.

We may assume from the frequent use of the crossing by the deceased, that he was familiar with the custom of the company to give occasional signals when trains approach the station, and that being so, the omission of the custom on this occasion may have lulled him into security, and induced him to advance after looking and listening for signs of an approaching train, as he did. (*Sullivan* v. *Tioga R. R. Company*, 44 Hun, 311.)

The crossing where the deceased met his death had been used so long with the assent of this company that such acquiescence amounted to a license, and imposed a duty upon the company in respect to all persons using the crossing to exercise reasonable care in operating its trains so as to protect them from injury.

Although in such cases the company is not absolutely bound to ring a bell or blow a whistle upon the locomotive of a train approaching such crossing, yet it is bound to give some notice and warning, and as to what is sufficient in this regard is a matter for the jury. When a train is approaching a crossing of this character the fact that the bell was rung does not as a matter of law establish the fact that the company used reasonable care, but it is for the jury to determine whether any other precaution should have been taken by those in charge of the train. (*Swift* v. *Staten Island Rapid Transit Railroad Company*, 123 N. Y. 649; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 id. 289; *Byrne* v. *Same*, 104 id. 362.)

These authorities all indicate the propriety of permitting proof upon the trial of all the acts either of omission or commission which surrounded this catastrophe.

In accordance with the suggestion in the opinion of the Court of Appeals, the plaintiff omitted proof of failure to give any alarm for the highway crossing east of the station. Our conclusion,

therefore, is that the evidence proves the defendant guilty of negligence in running a train over the farm crossing, and that the deceased was free from negligence.

The judgment should be affirmed, with costs.

PRATT, J., concurred; BARNARD, P. J., not sitting.

Judgment affirmed, with costs.