THE DENVER & RIO GRANDE RAILROAD COMPANY v. SULLIVAN.

1. RAILROADS—JOINT USE OF TRACK.

Where one company owns a line of railroad and another company is permitted to use a part of the line, the same duty devolves upon each to see that the road over which it runs its cars is safe and in good repair. Both companies are liable for injury resulting from the negligent condition of the track. The liability is joint against both companies, or single against either, and a release of damages to one company is a bar to an action against the other.

2. EVIDENCE.

A release which in plain and unambiguous terms states that the money paid to the releasor was in full settlement of a particular claim, is not subject to be contradicted or varied by parol testimony.

3. FRAUD—QUANTUM OF PROOF—PRACTICE.

It is error to submit a question of fraud to the jury upon slight parol evidence to overthrow a written instrument. The evidence of fraud must be clear, precise and indubitable; otherwise it should be withdrawn from the jury.

*Appeal from the District Court of Las Animas County.*

THIS is an action brought by George W. Sullivan against The Denver & Rio Grande Railroad Company to recover damages for injuries alleged to have occurred by reason of the negligence of appellant in constructing and keeping in repair its railroad track. At the time of the accident appellee was in the employ of The Union Pacific, Denver & Gulf Railway Company as brakeman. This company was a part of the Union Pacific Railway system, and at this time The Union Pacific Railway Company ran its trains over the line of The Denver & Rio Grande Railroad Company between

Pueblo and Trinidad, under an agreement with the latter company. On the 15th day of August, 1891, appellee was acting in his capacity as brakeman on one of The Union Pacific Railway Company's freight trains, and when near El Moro the car upon which he was standing was derailed, and in jumping therefrom he sustained the injury complained of. The jury found that there was what is known as a "lip" upon the track, which caused the derailment. Among other defenses, the appellant set up as a defense to the action the following release, executed by appellee to The Union Pacific Railway Company:

"DENVER, COLO., September 25, 1891.
"THE UNION PACIFIC RAILWAY COMPANY:
"To GEORGE W. SULLIVAN, Dr.

"Sept. 25th. For amount agreed upon in full settlement of claim against The Union Pacific, Denver & Gulf Ry. Company, on account of injuries received Aug. 15, 1891, trains, extra engine 1362, El Moro, Colorado, while employed as brakeman, and in full of all demands and claims of whatsoever character.

"Claim settled for $108.

(over)

"Paid by draft No. 1908.
      "Approved.
            "General Solicitor.
      "Approved.
            "Gen. Cl. Agt.

"I hereby certify that the above account is correct.
                              "G. N. MANCHESTER,
                                    "Claim Agent.

"Received, September 25th, A. D. 1891, of The Union Pacific Railway Company, $108 in full payment of the above account. In consideration of the payment of said sum of money, I, G. W. Sullivan, of Trinidad, in the county of Las Animas, and state of Colorado, hereby remise, release, and forever discharge the said company, its operated, leased and

auxiliary lines and companies, as well also as all companies whose lines are operated or known as a part of the Union Pacific system, of and from all manner of actions, suits, debts and sums of money, dues, claims and demands whatsoever, in law or equity, which I ever had or now have against said company by reason of said matter, cause or thing whatever, whether the same arose upon contract or upon tort, from the beginning of the world to this day.

" In case the said sum of money is paid for or on account of any claim against any other company, or for or on account of any legal obligation or liability of any other company, or for or on account of sums of money, dues, claims and demands whatsoever, in law or equity, which I ever had or now have against any company, I expressly admit and agree that The Union Pacific Railway Company is fully authorized to make such payment for and on behalf of such other company, and to adjust and settle my claim against it, and I hereby remise, release and forever discharge the company for and on behalf of which the said sum of money is paid, from all claims and demands whatsoever, as hereinbefore more fully set forth.

" In testimony whereof, I have hereunto set my hand this 25th day of September, 1891.

" G. W. SULLIVAN.

" Witness: G. N. MANCHESTER."

This defense was first traversed by appellee. Upon the trial of the cause, after the appellant had introduced its evidence and rested, and appellee was called to the witness stand in rebuttal, over the objection of appellant, the court granted appellee leave to amend his replication and set up fraud in the procuring of this release. Counsel for appellant thereupon asked that the trial be discontinued because of this new issue, which request was denied by the court. In support of this issue, appellee testified that he was taken into Mr. Manchester's office by Mr. Bissell, who introduced him to Manchester, and told him that witness was the man who was in the wreck above El Moro on the 15th of August,

1891, whereupon Manchester turned to him and said : " We have consulted our lawyers in regard to this matter, and they advised me that The Union Pacific Railway Company was not to blame for the accident." And he further stated that " according to the reports sent in by the trainmen, that the accident was caused by the lip on the rail, consequently the Rio Grande was responsible for the condition of the track. * * * He said he would allow me full time up to that date ;. and I said to him that I had to go to Hot Springs on account of my ankle, or, that is, my doctors had advised me to go, it would be beneficial to my ankle, and that I would like it if he would make it to the 1st of October, if. he would ; and after he decided to do it he said it would not be very much difference, so he made it that."

Appellee further testified that at that time he was still in the employ of The Union Pacific Railway Company ; had not been discharged ; that his salary from August 15th to October 1st would amount to $108 ; that he had not at any time made any claim against The Union Pacific Railway Company for the injuries to his ankle. Appellee was then asked to state to the jury if relying upon the statement of Manchester as true was the cause of his signing the instrument which he had signed. Over objection, he answered : " Yes, that was the cause of my signing the instrument ; that is, on the ground that I told him that I wanted to go to Hot Springs and wanted to get this time up to the first of October."

On cross-examination appellee testified that he had not, as a matter of fact, done any work for The Union Pacific Railway Company since the date of the accident, and had not up to the present time ; that he never, at any other time, received any money from Manchester as wages, so far as he remembered.

No witnesses were called by appellant upon this issue, but when Manchester was previously on the stand, and before the amendment to the replication whereby fraud was alleged in obtaining the release, on cross-examination he stated that he was instructed by the superintendent—Bissell—to pay

$108; that he did not know what salary appellee received; that he did not say to appellee that his company was not liable, and that if any one was liable it was The Denver & Rio Grande Railroad Company, and that no one said that in his presence; that he did not say their attorney had advised The Union Pacific Railway Company that it was not liable; that appellee read the document himself, it being handed to him to read by the witness; that there was nothing said at the time about the liability of the Denver & Rio Grande Company so far as he could remember.

The trial resulted in a verdict and judgment in favor of appellee for $5,000. From this judgment The Denver & Rio Grande Railroad Company prosecutes this appeal.

Messrs. Wolcott & Vaile and Mr. H. F. May, for appellant.

Messrs. Gordon & Hendricks, for appellee.

Mr. Justice Goddard delivered the opinion of the court.

It is manifest from the instructions under which the evidence was submitted to the jury, and the special findings, that the derailment of the car upon which appellee was standing at the time was occasioned by a defect in the track; and hence the negligence upon which the appellee bases his right of recovery against the appellant would also constitute a cause of action against his employer, The Union Pacific Railway Company, it being the duty of that company, as well as of the appellant, to see that the road over which it ran its cars was safe and in good repair. The same duty devolved upon it in this respect as though it owned the track. The rule upon this subject is thus stated in *Stetler v. The Chicago & N. W. Ry. Co.*, 46 Wis. 504:

" As between itself and its employés, who were directed to use the road in the business of the defendant company, such employés have the right to treat the road as the com-

pany's road, and the company as to its employes was bound to see that such road, whilst so used for its benefit by such employés, was in such condition as not to unnecessarily endanger their lives or limbs."

To the same effect are *Wis. Cent. R. R. Co. v. Ross*, 142 Ill. 9; *Ill. Cent. R. R. Co. v. Kanouse*, 39 Ill. 272; *The Wabash, St. Louis & Pac. Ry. Co. v. Peyton*, 106 Ill. 534; *Elmer v. Locke*, 135 Mass. 575; *Snow v. Housatonic R. R. Co.*, 8 Allen, 441.

It therefore follows that his cause of action was a joint one against both companies, or a several one against either. In other words, both companies were liable for the injury, and a release that would bar appellee's right of action against one would inure to the benefit of the other, and be equally available as a defense to the action. The court below adopted this view, and correctly held that if the release in question was binding as between the appellee and his employer, The Union Pacific Railway Company, it was also a discharge of appellant from all liability. The doctrine is thus announced in Cooley on Torts (2d ed.), p. 160:

"It is to be observed in respect to the point above considered, where the bar accrues in favor of some of the wrongdoers by reason of what has been received from or done in respect to one or more others, that the bar arises not from any particular form that the proceeding assumes, but from the fact that the injured party has actually received satisfaction, or what in law is deemed the equivalent. Therefore, if he accepts the satisfaction voluntarily made by one, that is a bar as to all." *Tompkins v. Clay St. R. R. Co.*, 66 Cal. 163; *Seither v. Phil. Traction Co.*, 125 Pa. St. 397; *Chapin v. C. & E. I. R. R. Co.*, 18 Ill. App. 47; *Brown v. City of Cambridge*, 3 Allen, 474; *Leddy v. Barney*, 139 Mass. 394.

In the latter case it is held that a release given to one who is not in fact liable operates as a release to all who may be liable. The court say:

"The rule that a release of a cause of action to one of several persons liable operates as a release to all applies to

a release given to one against whom a claim is made, although he may not be in fact liable.   The validity and effect of a release of a cause of action do not depend upon the validity of the cause of action.   If the claim is made against one and released, all who may be liable are discharged, whether the one released was liable or not."

Therefore, the controlling question in this case is whether the validity of the release relied on was successfully assailed upon the ground that it was fraudulently procured. In so far as the evidence introduced on this issue tends to show that the release was given as a receipt for wages merely, it was incompetent, since the writing, in plain and unambiguous language, states that the $108 was paid in full settlement of the claim against The Union Pacific Railway Company, on account of the injuries complained of, and in consideration of such payment expressly releases the company from any action therefor, and oral testimony is inadmissible to contradict or vary its terms.   The only testimony, therefore, that was admissible was the alleged statement of Manchester that he had been advised by its attorney that The Union Pacific Railway Company was not liable, and "according to the reports sent in by the trainmen, the accident was caused by a lip on the rail, consequently the Rio Grande was responsible for the condition of the track."

Laying aside the testimony of Manchester, who testified that he made no such statement, and assuming that the testimony of appellee is uncontradicted and that Manchester did so state to him, and that it was true that he had been so advised, we are at a loss to perceive wherein that statement constitutes in any sense a fraud.   It was at most a statement of opinion as to the legal liability of The Union Pacific Railway Company, and there was nothing in the relation of Manchester towards him that would imply any undue influence, or that should induce him to accept what he may have said without question.

"It has been more than once held that it is error to submit a question of fraud to the jury upon slight parol evi-

dence to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable; otherwise it should be withdrawn from the jury." *Pa. R. R. Co. v. Shay*, 82 Pa. St. 198; *Stine v. Sherk*, 1 Watts & S. 195; *Dean v. Fuller*, 4 Wr. (Pa.) 474.

It appears from the uncontradicted evidence that the appellee read the paper before signing, and was fully informed as to its terms. He was therefore advised as to its effect as a release of all liability on the part of The Union Pacific Railway Company,—a result that he never questioned until he learned that its legal effect was also to release appellant,—and it is apparent that he now questions its validity on account of a misconception of such legal effect, rather than because he was influenced to sign it by any representation as to the nonliability of The Union Pacific Railway Company.

The evidence relied on to show fraud in its procurement was clearly insufficient, and the court below erred in submitting that question to the jury. For this error we are compelled to reverse the judgment, and it is unnecessary to notice the other assignments. The judgment is accordingly reversed.

*Reversed.*