[No. 8326]

## BEELER v. THE PEOPLE.

1. CRIMINAL LAW.  *Larceny—Evidence*, examined and found amply sufficient to warrant a conviction.  (452, 454)

2. ——*Instructions. Indictment for Larceny.*  The evidence was circumstantial, and the court charged that the circumstances relied upon by the prosecution, should, to warrant a conviction, be made out beyond a reasonable doubt, and be "substantially inconsistent" with the prisoner's innocence; "practically incompatible with any reasonable hypothesis of his innocence;" "clearly and substantially made out," beyond reasonable doubt.  The phrases quoted were condemned as a departure from the phraseology established and approved in like cases, but the evidence of guilt being overwhelming, *held* that they were not prejudicial.  (455)

3. WORDS AND PHRASES *"Clearly and Substantially," "Practically Incompatible,"* construed.  (451, 458).  Hill, J., dissented.

*On rehearing.*

*Error to Park District Court.*—Hon. CHARLES A. WILKIN, Judge.

Mr. GEORGE S. REDD, for plaintiff in error.

Hon. FRED FARRAR, Attorney General, Mr. WENDELL STEPHENS, Assistant Attorney General, for The People.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

October 23, 1913, plaintiff in error, Harry L. Beeler was convicted of the larceny of one head of neat cattle, the property of D. M. Walker, and sentenced to the penitentiary. He brings the case here on error, and asks us to reverse the judgment for the reasons, as he contends, that the corpus delicti was not established, that the evidence was insufficient to support the verdict, and the instructions erroneous.

January 15, 1913, Walker, while riding in company with one Huntley, came upon the carcass of a freshly killed and partly butchered young Hereford steer bearing his brand, about 250 or 300 yards from the house where Beeler lived with his parents. The body was still fresh and warm from animal heat, the head had been severed and carried away, the carcass was cut transversely across the middle, the back-bone severed and the brisket opened with an axe or hatchet. The animal was in prime condition, very fat and perfectly normal, sound and healthy. It had bled freely when killed, as evidenced by the clean white flesh, and hide, the absence of blood between the flesh and skin, and the colorless condition of the flesh side of the hide, and the vital organs were all sound, healthy and normal.

The theory of the prosecution was, that defendant rode from his barn or corral to a bunch of cattle belonging to Walker, cut out a steer and after driving it some distance, had shot it in the head, cut off the head and was quartering the carcass when he was interrupted or became frightened, took the head to the house, and later burned it.

A recent fall of snow had obliterated all old tracks and it appeared, from the people's evidence, that freshly made tracks disclosed that someone leaving Beeler's barn that morning on horseback, had ridden to a herd of cattle, where an animal was separated from the bunch and driven away. The tracks of the horse followed those of the animal and led directly to the carcass found by Walker and Huntley. These tracks indicated that the horse had been left about 23 paces from the animal, and from this location a man's tracks could be traced to the carcass, back again to the horse, and from there the horse's tracks led directly back to Beeler's barn. Following the tracks between the position of the carcass and the barn, blood stains appeared at intervals on the snow and in places there were indications that some object had been dragged along for a short distance. As the parties who were investigation the matter, while following the trail, approached Beeler's house, they saw defendant run out, pick up the head, put it in a sack and carry it into the house. They called him out and interrogated him as to what he knew concerning the dead animal and in reply to questions he stated that while rabbit hunting that day, he had found the steer dead, cut off its head for his dogs, and cut open the carcass so they could better get to it to eat. He denied any knowledge of how the animal had met his death; but said that someone must have shot it from the ridge. During the conversation he said that while he had nothing to do with killing the steer, still he would rather pay Walker for it than have him think he did. The parties then requested the privilege of examining the head, but he told them the dogs had carried it away and he could not find it. In answer to questions, he said it was not the head he put into the sack upon their approach, but was bones he picked up and carried into the house for the purpose of grinding

into chicken feed. They then requested permission to examine the house and see the bones in the sack, but defendant said he had no authority to grant the request as the premises belonged to his mother, and when the request was made to her, she flatly refused the permission without a search warrant. About two hours afterward, in riding by the Beeler house, it was noticed the surrounding atmosphere was filled with the odor of burning hair and flesh. The country was sparsely settled and a careful survey of the vicinity disclosed no tracks except those leading from Beeler's barn to the bunch of cattle, from there to the carcass and back to the barn.

1. Under these circumstances we think the evidence ample to show that a crime had been committed and that the jury were justified in finding that defendant perpetrated the crime; in fact we do not see how they possibly could have arrived at any other verdict. Since the motion for a rehearing was granted we have read the bill of exceptions through with great care, and find that the evidence amply sustains the *corpus delicti,* and the guilt of the defendant. It would have been a travesty upon justice had the jury returned any other verdict.

2. In the former opinion we stated, ''Perceiving no error in the instructions　*　*　*　the judgment will be affirmed.'' Bitter complaint is now made because we disposed of the case, as is said, without considering the instructions, and we will now discuss them. Instruction 1 defines the offense and tells the jury before they can convict defendant they must be satisfied from the evidence beyond a reasonable doubt that the crime charged was committed by him at Park county, Colorado. Instruction 2 defines a reasonable doubt and tells the jury the defendant is presumed to be innocent of the crime charged until proven guilty, and unless they are satisfied from the evidence beyond a reasonable doubt of his guilt,

they must acquit him. Instruction 4 contains the alleged objectionable phrases or expressions, and is substantially as follows: The evidence in part at least, is circumstantial, that is, direct evidence as to how the steer came to his death, whether he was killed by human agency, and if so, by whom, is absent, and the jury are advised that the facts and circumstances relied upon for sustaining the charge should be made out to the satisfaction of the minds of the jury beyond a reasonable doubt; the facts and circumstances thus made out should not merely be consistent with the guilt of the defendant, but they should be substantially inconsistent with his innocence; that is, they must be practically incompatible with any reasonable hypothesis of the defendant's innocence; if the facts and circumstances in evidence are subject to be reasonably explained upon the theory that the defendant is innocent, then it would be your duty to regard the circumstantial evidence as insufficient, but otherwise, if the facts and circumstances are clearly and substantially made out from the evidence to the satisfaction of the minds of the jury beyond a reasonable doubt, and the effect and significance of those facts is that the defendant is guilty, and the effect and significance of those facts in the minds of the jury is not only that the defendant is guilty beyond a reasonable doubt, but that he could not reasonably be innocent, consistently with such facts and circumstances, then it would be the duty of the jury to find defendant guilty as charged, otherwise it would be your duty to return a verdict of not guilty.

Complaint is made of the expressions: "substantially inconsistent," "practically incompatible," "clearly and substantially made out," "effect and significance of those facts." In criminal cases, where the evidence is circumstantial, it is proper for the court to explain to the jury that circumstantial evidence is competent and

will amount to proof of the offense where the facts and circumstances in connection with the other evidence on the trial satisfies the minds of the jury beyond a reasonable doubt of defendant's guilt. It is not a question of whether the evidence is direct or circumstantial; but whether it satisfies the minds of the jury of the guilt of the defendant beyond a reasonable doubt. In cases where circumstantial evidence is relied upon for a conviction the facts and circumstances in evidence on the trial must not only be consistent with the defendant's guilt beyond a reasonable doubt, but inconsistent with any reasonable hypothesis or theory of his innocence. If the facts and circumstances on the trial, relied upon for a conviction, can be reasonably explained or explained upon any reasonable theory of defendant's innocence, then circumstantial evidence alone is insufficient to warrant a conviction, but if the facts and circumstances in evidence in connecton with the whole evidence on the trial satisfies the minds of the jury beyond a reasonable doubt of defendant's guilt, they amount to proof of the offense and the jury should return a verdict of guilty. In a proper case it is usual upon request to give appropriate instructions explaining the law of circumstantial evidence without using such qualifying words or expressions as were given in instruction 4, except the word reasonable. The circumstances must be incompatible with any reasonable theory of innocence or incapable of being reasonably explained upon any theory of defendant's innocence.

We do not approve of this instruction or recommend it as a model. The court had better have stayed within the trodden path and not experimented with these unusual expressions in such an instruction; but it does not follow that the case should be reversed on this account. We should not reverse the case unless it preju-

diced the rights of the defendant. The use of the words even under the defendant's contention or construction of them was without prejudice to him. Instruction 4 tells the jury the facts and circumstances must be clearly and substantially made out from the evidence to the satisfaction of the jury beyond a reasonable doubt; that the facts and circumstances must be consistent with the guilt of the defendant and substantially inconsistent with his innocence and practically incompatible with any reasonable hypothesis of his innocence; if they should be reasonably consistent upon the theory of his innocence, the circumstantial evidence was insufficient. But if the effect and significance of the facts and circumstances in evidence on the trial, on the minds of the jury was not only that he was guilty beyond a reasonable doubt, but that he could not reasonably be innocent consistently with such facts and circumstances, they should find him guilty; otherwise, not guilty. Considering the instructions as a whole it is evident the jury must have understood from the language used, they could convict the defendant only in the event the facts and circumstances in evidence on the trial satisfied their minds beyond a reasonable doubt of his guilt, and if they could explain such facts and circumstances upon any reasonable theory of his innocence, they must acquit. When we consider that the evidence of the defendant's guilt is overwhelming, we do not think he was prejudiced in the least by instruction 4.

3. There is no doubt but the court in using such expressions as "Substantially inconsistent," "practically incompatible," "clearly and substantially made out," "effect and significance," intended to safe-guard the rights of the defendant. The Century Encyclopedia and Dictionary defines "substantially" as, "with reality of existence." In *Cheeseman v. Hart,* (C. C.) 42 Fed.

99, it is said: "The term substantially means really, truly, essentially, competently." In *Commonwealth v. Wentworth*, 118 Mass, 441, it is said: "The word substantially being clearly used as meaning really or essentially." In *Western Assurance Co. v. Altheimer*, 58 Ark. 565, 25 S. W. 1067, the court held that substantially means "in a substantial manner; clearly; solidly; truly; competently."

We are satisfied the word was used in the instruction, not as a matter of form, but as going to the substance of the inconsistency and placed a burden upon the people rather than the defendant, of which he cannot complain. It means as used in the instruction, having a reality of existence; that the inconsistency with his innocence which will warrant a conviction must have a substantial existence; that is, it must be of a true, actual, substantial character and have a well founded and substantial existence in fact. It was intended to show that the prosecution must prove that really and truly the facts and circumstances are inconsistent with the innocence of the defendant.

In Century Encyclopedia and Dictionary, "clearly" is defined as "to leave no doubt."—*McEvony v. Rowland*, 43 Neb. 97, 61 N. W. 124, defines "clearly" to mean: "without uncertainty, beyond a question, or beyond a reasonable doubt." In *People v. Wreden*, 59 Cali. 393, it is held the expression "clearly established by satisfactory proof," is the full equivalent of established by satisfactory proof beyond a reasonable doubt. So we see the expression "clearly and substantially" as used in this instruction, simply meant beyond a reasonable doubt and was surplusage, adding nothing to the instruction and should have been omitted. In *Moore and Ray v. Wilder*, 66 Vt. 33, 28 Atl. 320, the court construes "practical" to mean: "what would be practical, reasonable, feas-

ible." As used in instruction 4 "practically incompatible" means reasonably incompatible. It means the same thing as .used in connection with "reasonable hypothesis," was surplusage, and should have been omitted.

The court told the jury that the effect and significance .of the facts and circumstances upon the minds of the jury must not only be that the defendant was guilty beyond a reasonable doubt, but that he could not reasonably be innocent. "Effect and significance" as so used, means the result or conclusion in the minds of the jury. It. means that the evidence must leave a result or conclusion in their minds, not only that the defendant is guilty beyond a reasonable doubt; but that he could not reasonably be innocent and the facts and circumstances be true. If the facts and circumstances were clearly and substantially made out from the evidence on the trial to the satisfaction of the jury beyond a reasonable doubt and the effect and significance, that is, the result and conclusion produced from those facts on the minds of the jury is that defendant is guilty beyond a reasonable doubt, he has no ground for complaint.

While we said we do not recommend instruction 4 as a model, it is clear the expressions complained of as used in this instruction are not a departure from the law governing circumstantial evidence.

The former opinion is withdrawn and the judgment affirmed.

*Affirmed.*

Decision *en banc.*

Mr. JUSTICE BAILEY and Mr. JUSTICE SCOTT not participating.

Mr. JUSTICE HILL dissents.

Mr. JUSTICE HILL dissenting:

I cannot agree with the conclusion. In my opinion, Instruction No. 4 is fundamentally wrong, as well as misleading, and was prejudicial to the rights of the defendant. Neither can I agree that the expressions complained of are not a departure from the law governing circumstantial evidence. This instruction tells the jury. 'that the facts and circumstances thus made out, (viz, those relied upon to sustain the charge) should not merely be consistent with the guilt of the defendant, but they should be substantially inconsistent with his innocence, that is, they must be practically incompatible with any reasonable hypothesis of the defendant's innocence. Neither of these assertions has ever been the law in this jurisdiction. No case has been cited which thus holds, and I vouch the statement that none can be produced which even tends to support such a conclusion. This instruction, in substance, tells the jury that they should convict the defendant if the facts and circumstances upon which they rely are substantially inconsistent with his innocence, or practically incompatible with any reasonable hypothesis of his innocence. It is elementary that the law is and always has been, that to convict a defendant on circumstantial evidence, it must not only be consistent with his guilt beyond any reasonable doubt, but be inconsistent (not substantially inconsistent only) with any other reasonable conclusion. Likewise, it must be incompatible, not practically incompatible, with any reasonable hypothesis of the defendant's innocence. To hold that this was not error or that the jury could not have been mislead by it, in my opinion, are erroneous conclusions. Both words qualify or modify and tend to weaken the instruction. The language has been condemned and held insufficient in indictments and informations.—*Edgerton v. State,* 70 S. W. (Texas), 90; *Thomas v. The State,* 103 Ind. 419.

It has also been given a different meaning and effect in civil cases.—*Morris v. Hokosona,* 143 Pac. (Colo. App.) 826; *Elliott v. Caldwell,* 43 Minn. 357; *Hardin County v. Wells,* 108 Iowa 174.

The conclusion that these words placed a burden upon the people, rather than the defendant, of which he cannot complain, in my opinion, is clearly erroneous. Had they referred to anything which the defendant was required to prove, there might be some force to this contention; but they refer solely to what the people must overcome, and in substance say they need not entirely overcome it, but it is sufficient if they substantially do so, or if they practically do so. As I view it, these expressions modify the words "inconsistent" and "incompatible" and the words "substantially inconsistent" do not mean the same as "inconsistent," and "practically incompatible" does not mean the same as "incompatible," but as given in this instruction it left it to the jury with these words thus qualified to enter upon the sea of conjecture, viz, to consider the effect of something less than, or almost essential, but not wholly, or not fully, and this in a case where conjectures are not to be permitted, but where it is elementary that the proof should establish the guilt of the defendant beyond a reasonable doubt.

Decided December 7, A. D. 1914. Rehearing granted December 9, A. D. 1915. Affirmed on rehearing March 1, A. D. 1915.