No. 12,700.

HOOPER *v.* CAPITOL LIFE INSURANCE COMPANY ET AL.
(20 P. [2d] 1011)

Decided April 3, 1933.

Mr. A. L. DOUD, Mr. JAMES D. PARRIOTT, for plaintiff in error.

Mr. CHARLES R. BOSWORTH, Mr. RODERIC J. BOSWORTH, for defendants in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE plaintiff in error, Thomas J. Hooper, owned five lots in Denver. On lots 31 and 32 and the south half of lot 33 there was an apartment house known as No. 1753 Grant street; on the north half of lot 33 and all of lots 34 and 35 there was an apartment house known as No. 1755 Grant street. Hooper borrowed $14,000 from defendant in error the Capitol Life Insurance Company and gave his promissory note for that amount, and, to secure the payment of the note, he gave his mortgage upon the five lots, together with all improvements thereon. Thereafter Hooper conveyed to Edward J. James the property known as No. 1755 Grant street in exchange for a farm. The deed covenanted that the property was free from encumbrances, except the $14,000 mortgage, "which said mortgage and the whole thereof" the grantee "hereby assumes and agrees to pay." James borrowed money from defendant in error Edward P. Gallup and, to secure the repayment of the amount so borrowed, gave a trust deed of No. 1755 Grant street, naming defendant in error Wheeler S. Peck as trustee. The insurance company sued to foreclose the Hooper mortgage. Hooper, in a cross-complaint, alleged that James, by said clause in the deed to him, assumed and agreed to pay the entire $14,000 mortgage. James filed a cross-complaint, seeking a reformation of the deed. In it he alleged that such assumption was contrary to the agreement of the parties, that the assumption clause was inserted in the deed by the scrivener at the instance of Hooper and without the consent or knowledge of James, and that James did not know of its presence until after this suit was brought. These allegations are denied by Hooper. Hooper claims, and James denies, that the property deeded to James is the primary fund for the payment of the entire debt secured by the mortgage given by Hooper. The trial court found the issues in favor of James, decreed a reformation of the deed to him by striking out the assumption clause, and decreed, further, that, as between Hooper and James, the property deeded to James should bear three-eighths, and the property re-

tained by Hooper should bear five-eighths, of the total mortgage debt. The correctness of these rulings is questioned by Hooper. There are other matters discussed, but they are merely incidental to the questions raised by the foregoing rulings.

1. It is contended that the assumption clause in the deed expressed the true agreement of the parties.

To justify the reformation of a deed, the proof must be clear, unequivocal and indubitable; a mere preponderance of the evidence is not sufficient. *Colorado Trout Fisheries v. Welfenberg*, 84 Colo. 592, 273 Pac. 17; *Anderson v. Juanita Coal & Coke Co.*, 83 Colo. 562, 267 Pac. 400; *Merrick v. Morelock*, 73 Colo. 245, 215 Pac. 133; *Gibbs v. Wallace*, 58 Colo. 364, 147 Pac. 868; *Loukowski v. Pryor*, 46 Colo. 584, 106 Pac. 7; *Wilson v. Morris*, 4 Colo. App. 242, 36 Pac. 248; *Connecticut Fire Insurance Co. v. Smith*, 10 Colo. App. 121, 51 Pac. 170; *Wells v. Crawford*, 23 Colo. App. 103, 127 Pac. 914. But where the proof is of that character, the instrument may be and should be reformed. *Colorado Trout Fisheries v. Welfenberg, supra.*

Several weeks prior to the conveyance, the parties executed a written agreement, whereby Hooper agreed to convey to James No. 1755 Grant street, "said property being subject to $14,000, otherwise clear of incumbrance," in exchange for James' ranch, "the same to be subject to incumbrance of $11,000, as shown of record."

Experts on real estate values testified that the value of the property deeded to James was $15,000, and that the value of the property retained by Hooper was $25,000. It was on this basis that the trial court apportioned the mortgage debt, three-eighths to the former property and five-eighths to the latter property. The James ranch was valued by both parties at $40,000. It had an encumbrance of $11,000. James' equity, therefore, was $29,000. If it is true, as Hooper contends it is, that the agreement was that James assumed and agreed to pay the entire encumbrance on both the properties he

acquired and the property retained by Hooper, namely, a total of $14,000, he would be receiving for his $29,000 equity in the ranch only $1,000, which would mean a clear loss of $28,000. It is highly improbable—indeed, incredible—that anyone in his right mind would make such an agreement, and, of course, James' sanity is not questioned. The disinterested testimony of qualified experts as to the value of the apartment house properties was opposed by the testimony of Hooper alone. He placed a much higher value on those properties. The evidence as to the terms of the agreement and as to whether or not James knew, at the time he received the deed, or at any time before the suit was brought, that it contained the assumption clause, is in sharp conflict. We will not burden the opinion with a detailed statement of the evidence introduced by each litigant. A careful review of all the facts and circumstances in evidence satisfies us that the written agreement for exchange of properties expressed the real intent of the parties, that the assumption clause was inserted in the deed at Hooper's instance and without the consent or knowledge of James, and that not until after suit was brought did he know that the deed contained such clause.

2. Counsel for Hooper contend that James cannot be permitted to deny knowledge of the presence of the assumption clause in the deed; and that, at any rate, his ignorance thereof was the result of gross negligence on his part, which, it is said, disentitles him to relief.

To sustain their contention, counsel cite, among other cases, *Jaeger v. Whitsett*, 3 Colo. 105; *Gillett v. Flora*, 68 Colo. 218, 187 Pac. 527; *Parker v. McGinty*, 77 Colo. 458, 239 Pac. 10; and *Work v. Wagner*, 76 Colo. 407, 231 Pac. 1110. Those cases were not suits or cross-suits for reformation, and the facts were unlike those in the case at bar. In the Work case, supra, the trial court denied an application for leave to amend a complaint so as to ask for reformation of a mortgage. We said: "Whether or not the mortgage might be reformed in a proper pro-

ceeding and under other circumstances, need not be determined.'' Then something is said concerning the mortgagee's negligence in taking the mortgage containing a misdescription. The facts were not at all similar to those in the case at bar. We have decisions in this jurisdiction that are applicable to this case. In *Lloyd v. Lowe,* 63 Colo. 288, 165 Pac. 609, an action for a personal judgment on a promissory note, the plaintiff claimed that, by virtue of a clause in a deed, the defendant assumed and agreed to pay the note. As an equitable defense, the defendant pleaded that the assumption clause was inserted in the deed without the defendant's authority, knowledge or consent. There, as here, the parties previously made a written contract in which it was stated that the land was subject to the encumbrance, but there was no reference to an assumption or agreement to pay. There, as here, it was contended that, having received the deed, the defendant was bound to know its contents, and that if he did not, it was because of his own negligence in not reading the deed, and therefore that he could not be heard to complain of the assumption clause or escape his liability thereunder. We said: ''The fact that the defendant agreed to purchase land 'subject to a mortgage' raises no presumption that there was an agreement to assume and pay the incumbrance. * * * *Elliott v. Sackett,* 108 U. S. 132, 27 L. Ed. 678, 2 Sup. Ct. 375. * * * The defendant in this case denies that he accepted the deed at all. But, assuming that the evidence clearly shows that he did accept the deed, it also shows that he accepted it without knowledge of the assumption clause, and therefore cannot be bound under the rule stated in *Demaris v. Rodgers, supra.* The fact that he did not read the deed had no bearing either upon his liability or his defense. It does not charge him with negligence. In *Elliott v. Sackett, supra,* the court said: 'Elliott had a right to presume that the deed would conform to the written agreement, and was not guilty of such negligence or laches, in not observing the provision of the deed, as

should preclude him from relief.' " In *Hitchens v. Milner Land, Coal & Townsite Co.*, 65 Colo. 597, 178 Pac. 575, a suit for reformation of a deed of trust, it was contended that the grantor was negligent in failing to read the instrument at the time he signed it. We followed the Lloyd case, supra, and said: "It has been repeatedly held that the fact that a person accepts or signs an instrument without reading the same is not of itself a conclusive barrier to suit." In 1 Wiltsie on Mortgage Foreclosure (4th Ed.) section 240, it is said: "A grantee is not conclusively bound by an assumption clause in a deed even as against the mortgage [mortgagee] or other third parties. He may show the real contract between the parties, though in contradiction of the assumption clause. And parol evidence is admissible. An agreement to assume is subject to any defense that would exist between the original parties. If there is no actual acceptance or intention by the grantee to assume the mortgage, he will not be holding [holden] for the debt; for the reason there has been no meeting of the minds and consequently no contract. The grantee will be liable for the debt only where such liability was a part of the bargain for the sale of the property. Therefore, where a clause is inserted in a deed of conveyance by which the grantee is made to assume and agrees to pay the mortgage and he had no knowledge or notice whatever of the insertion of such clause until after the completion of the transaction and did not make any such agreement, he is not liable thereon and may have the deed reformed by striking out the clause." In *Stead v. Sampson* (Iowa), 155 N. W. 978, the court said: "It is elementary that one cannot be sued upon a contract and held bound thereby until it affirmatively appears that either by himself, or by one authorized to act for him, he made the contract sought to be enforced against him. True, this deed was made by Sampson to Wieneke, and delivered to Wick, and by Wick to Wieneke, with this assumption of the mortgage in the deed, but it does affirmatively appear that in the

only written contract made between the parties he did not assume the mortgage. It affirmatively appears that Wieneke never consented or agreed to assume the mortgage. It affirmatively appears that he did not know until after this suit was brought that the deed contained the provision now sought to be enforced against him." The court approved the following findings of the trial court: "That the defendant Wieneke had the right to assume that the deed executed to him was in accordance with the contract then existing between them, and in accordance with Sampson's instruction in his letter of April 13th. That the deed was not made in accordance with the terms of the contract, and does not express the real contract between the parties. That the deed ought to be reformed so as to make it express the real contract of the parties as expressed in the" written contract. In *Kilmer v. Smith,* 11 Jones & S. (N. Y.) 461, the court said: "The deed sought to be reformed by reason of this departure from the provision of the contract, differs in this respect from those cases where a change is sought in the absence of a contract of sale, that the parties to this instrument have preliminarily reduced to writing, and formally declared their understanding and agreement, as to the obligations resting upon each party. Unless some modification or change was agreed to by the parties, it was clearly the duty of the appellants, Smith and wife, to have delivered their deed to the respondent with the subject clause only, and not to have inserted an additional and uncalled-for clause, by which the plaintiff agreed to assume and pay these mortgages." When that case reached the Court of Appeals, that court stated its views in these words: "In this case there is not only no finding of such agreement or assent, but on the contrary, there is a finding that there was no agreement or assent by the plaintiff or his assignor, and further that the deed was taken by the plaintiff in ignorance, and upon the supposition that it was drawn in accordance with the contract. There is evidence which sustains this finding. The case

is not to be regarded as one of mutual misunderstanding or mistake, but rather as a case where one party deliberately inserted in a deed a covenant tending to his own advantage, and another's prejudice, and the latter in ignorance that the instrument contains the covenant accepts it as in fulfillment of a contract which requires no such stipulation. The denial of relief in such a case would be at variance with long established doctrines of courts of equity, and a reproach to the law itself. (Story Eq. Jur., Vol. 1, §138c.) It has therefore been held that the ignorant party is entitled to relief, notwithstanding the other acted advisedly, and upon full information, for that being admitted, there is fraud." *Kilmer v. Smith,* 77 N. Y. 226.

We conclude that the reformation of the deed by striking therefrom the assumption clause was warranted by the evidence and the law.

3. But it is contended that, assuming that the written agreement for the exchange of the properties expressed the final and true agreement of the parties, the property obtained by James, being subject to the $14,000 mortgage, is the primary fund to pay the mortgage debt.

What the legal situation would have been had Hooper included both properties in the conveyance to James, we need not consider, for he conveyed only one. Where an estate subject to a mortgage is conveyed by the mortgagor in parcels at different times, and the mortgage debt is not mentioned in the deed, such debt should be satisfied, first, out of that portion of the estate retained by the mortgagor, and then out of the parcels aliened, in the inverse order of alienation. *Fassett v. Mulock,* 5 Colo. 466; *Stephens v. Clay,* 17 Colo. 489, 30 Pac. 43. This rule, however, may be controlled by recitals in the deed showing a different intent. Where reference to the mortgage is made in the deed, it is for the court to determine the intent of the parties as expressed by the language they use. *Stephens v. Clay, supra.* In that case the deed referred to the encumbrance in both the grant-

384

ing and habendum clauses, and we held that the grantee took his interest burdened with his share of the encumbrance, which the court found to be one-half. In the case at bar the encumbrance is referred to in the contract and in the deed, as reformed, and the trial court found that, equitably, the property deeded to James should bear an undivided three-eighths of the total mortgage debt, and that the property retained by Hooper should bear five-eighths of that debt.

4. James filed a cross-assignment of error, contending that the property retained by Hooper is primarily bound for the entire mortgage debt. We cannot sustain that contention. *Stephens v. Clay, supra.*

An examination of the record satisfies us that the trial court's disposition of the case was fair and just and was warranted by the facts and the law.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE MOORE concur.