Beyer *v.* The Fidelity Mutual Life Ins. Company, Appellant.

Argued September 27, 1934.

Before KELLER, CUNNINGHAM,

BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Charles M. Willits,* with him *Richard H. Hollenberg, Ira Jewell Williams, Francis Shunk Brown* and *George H. Wilson,* for appellant.

*Langdon W. Harris, Jr.,* with him *Felice E. Darkow* and *S. S. Herman,* for appellee.

OPINION BY CUNNINGHAM, J., February 1, 1935:

On October 7, 1931, the appellant insurance company issued its policy, in the sum of $1,000, upon the life of G. Leidy Beyer, in which his wife, Dorothy M. Beyer, appellee herein, was named as beneficiary. The insured died October 26, 1932,—within the period during which the policy, under its terms, was contestable. No medical examination was required, but the policy was based upon a written application.

When this action was instituted in the court below by the beneficiary, appellant tendered the return of the premiums it had received and defended against any further liability upon the ground that the insured had, in his application, wilfully and knowingly made false, fraudulent and untrue answers to certain questions propounded to him by appellant's soliciting agent.

The trial judge refused appellant's point for bind-

ing instructions and the jury returned a verdict in favor of the beneficiary for the face amount of the policy, with interest; appellant's motions for a new trial and for judgment n. o. v. were dismissed and it now appeals from the judgment entered upon the verdict.

The only alleged errors, properly assigned, are the fifth and sixth, based upon the denial of appellant's motion for judgment in its favor upon the whole record, and the refusal of a new trial. The denial of the motion for judgment n. o. v. may be readily disposed of. This feature of the case is ruled by Dzsujko v. Eureka-Maryland Assurance Corp., 109 Pa. Superior Ct. 9, 165 A. 518, and the cases there cited. See also Brelish, Adm., v. Prud. Ins. Co., ibid. 1, 165 A. 516. The evidence here relied upon to sustain appellant's contentions was oral, and no matter how clear and undisputed such evidence may be it is nevertheless the province of the jury to pass upon the credibility of the witnesses. It would have been reversible error if the trial judge had affirmed appellant's point for binding instructions or if the court below had granted its subsequent motion for judgment n. o. v.

In our opinion, the private office memoranda of dates of visits and of alleged symptoms, etc. (which Dr. Goodwin used while upon the stand to refresh his recollection) even if offered in evidence, as indicated by the record, did not constitute such documentary evidence as should exclude this case from the operation of the rule applicable to purely oral evidence.

However, that rule, reaffirmed by our Supreme Court in Nanty-Glo Boro. v. Amer. Surety Co., 309 Pa. 236, 163 A. 523, and applied by us in the Dzsujko case, is, of course, subject to the salutary power in the trial court to grant a new trial if it deems a verdict capricious or contrary to the weight of the evidence.

The controlling question here is whether the court

below abused its discretion in dismissing appellant's motion for a new trial. In this contract of insurance the parties agreed that the policy and the written application attached thereto should constitute their entire contract. In part two of the application, containing, inter alia, the questions and answers here involved, the insured certified he had carefully read the questions and answers; that each was written correctly, as made by him, and is full, complete and true; and agreed that they were the basis, and a part of the consideration for the contract.

Question No. 25 reads: ''Are you now in good health and free from any bodily defect? If not, give particulars of impairment.'' To this question the insured answered ''yes.''

Questions Nos. 20, 23 and 24 were as follows:

''20. Have you now or have you ever had any of the following: (a) asthma, tuberculosis, pneumonia, pleurisy or blood spitting; (f) syphilis, rheumatism, gout or malaria?

''23. Have you had medical advice or treatment during the past seven (7) years for any ailment, injury or disease, not already stated?

''24. Have you been attended by any physician or surgeon or by any practitioner of any school, cult, sect or society, during the past seven years? If so, by whom and when?'' To each of the foregoing questions the insured answered ''no.''

At the trial, appellee established her prima facie case by offering in evidence the admitted averments in the pleadings, together with the policy of insurance.

Appellant then had the burden of showing affirmatively by a preponderance of clear and convincing evidence that the insured deliberately attempted to deceive it with respect to the condition of his health by making answers which he knew were false.

As the case developed at the trial, the material ques-

tions which it was the duty of the insured to answer truthfully on October 5, 1931, were whether, (a) he ever had tuberculosis, or blood spitting; (b) had, during the past seven years, medical advice or treatment for any ailment, injury or disease; (c) had been attended, during that period, by any physician; and (d) was then in good health and free from any bodily defect.

The single witness by whom appellant undertook to meet its burden was Dr. Warren C. Goodwin, a graduate of the medical school of the University of Pennsylvania, and engaged in practice at No. 3740 Powelton Avenue. This witness testified that the insured had consulted him as early as December 26, 1917, for hayfever and asthma, at which time he found that both lungs "were involved with tubercular bacilli," and that he continued to treat him until September, 1922. Coming down to the year in which the application was made and the policy issued, the doctor testified that in March, 1931, he began to treat the insured regularly for asthma, hay-fever and tuberculosis which had progressed somewhat since the witness last saw the insured in 1922. According to the statements of this witness, he treated the insured approximately every week from March 27, 1931, to October 26, 1932, the date of his death. During this period the witness said the insured had a hemorrhage on May 6, 1931, and another on May 25th of that year, both dates being prior to that of the application.

Unless there was something about the manner of this witness, or inherent in his testimony, which cast grave doubt upon his credibility, the testimony to which we have referred would weigh heavily in favor of appellant.

No part of the charge in which the trial judge submitted to the jury the issues of fact arising out of the evidence has been assigned for error. The fact that

the insured had frequently been at Dr. Goodwin's office prior to the date of the application was not questioned. Sometimes he was accompanied by the appellee. Her explanation was that she and her husband were intimate friends of the doctor and his wife and that the visits were social and not for professional advice or treatment. As to "being attended by a physician," see McBride v. Sun Life Ins. Co., 90 Pa. Superior Ct. 35. Upon this issue the trial judge charged: "Were those professional or social visits during the residence of Mr. and Mrs. Beyer in Philadelphia, which were paid to Dr. Goodwin? That is something you must determine, bearing in mind the attitude of the doctor on the stand, his method of testifying and his method of giving cause and effect as to that which he could put his hand on and that for which he was searching. Since he is to you a mere witness, his credibility is a matter for you. Whether his testimony is worthy of belief is entirely a matter for you."

That the jury did not believe Dr. Goodwin is evident from their verdict. Was it such a capricious disbelief as entitled appellant to a new trial? In his opinion refusing a new trial the trial judge, WALSH, J., who had the advantage of seeing and hearing the witness, said his demeanor on the stand was such as to inspire "very little confidence in his testimony," and that "the cross-examination brought forth from the doctor conflicting, confusing and seemingly unreliable statements as to his method of treatment for alleged ailments."

No purpose would be served by an extensive review of the conflicts, uncertainties and inaccuracies in Dr. Goodwin's testimony. A few examples will be sufficient for present purposes.

He testified that the cause of insured's death was

an "internal hemorrhage." In his death certificate filed in the bureau of vital statistics on November 17, 1932, cancer of the esophagus is given as the primary, with chronic malaria as the contributory, cause of death.

An excerpt from his testimony on cross-examination reads: "Q. When did you diagnose his condition as being cancer? A. When I came to have to explain why it was that he had an internal hemorrhage and when I had gone very carefully over my findings of the tubercular involvement then I had to say what it was that would be most likely to cause the internal hemorrhage and that is what I put down and that is the reason I put it down. Q. In other words you didn't really know that he had cancer, did you? A. I did not; I didn't look for that hemorrhage. Q. Certainly you were not looking for it. Doctor, the hemorrhage that he had then resulted from cancer, didn't it? A. That is what the evidence seems to show, that is the best I could do under the circumstances. ...... Q. You said it depended on the type, what type of cancer was this, doctor? A. Well, there was no evidence from which you could tell, I know there was an internal hemorrhage and then I had to supply what caused that internal hemorrhage, that is as far as I could go. Q. In other words, you then concluded after you were asked to explain what disease Mr. Beyer died from, you decided it was carcinoma? A. It was most likely carcinoma, that is the reason I put it down. Q. Do you know to this day from what disease Mr. Beyer died? A. It is not necessary to know. ...... He died, that is all I knew."

Although the witness testified that "toward the end of 1931 [he] could not find any condition that [he] could place [his] finger on involving tuberculosis," his certificate, forming a part of the proofs of death, assigned tuberculosis as the cause of death and he

there stated he had treated the insured for that disease for only a few months in 1931.

Other testimony indicated there was a wide variance in the methods adopted by Dr. Goodwin in diagnosing and treating tuberculosis and those generally followed and approved by the members of his profession. After reading and considering the entire testimony of Dr. Goodwin, we cannot disagree with the characterization placed upon it by the trial judge.

Moreover, there was convincing testimony from members of the insured's family and from his employers and friends that he worked regularly until within a few days of his death; that, with the exception of periodic attacks of hay-fever, he was apparently in good health; had increased in weight from 150 to 170 pounds and was the father of three normal and healthy children.

Upon a review of this record, we cannot say the weight of the evidence was so clearly with appellant that the jury should have accepted it and rendered a verdict in its favor. On the contrary, we think there was evidence from which a jury could reasonably find in favor of the beneficiary and that the refusal of the court below to grant a new trial was a proper exercise of the discretion vested in it.

Judgment affirmed.