No. 18,300.

OLINGER MUTUAL BENEFIT ASSOCIATION *v.*
JAMES S. CHRISTY.
(342 P. [2d] 1000)

Decided June 8, 1959. Rehearing denied August 24, 1959.

426

Mr. Dayton Denious, Mr. Omer Griffin, for plaintiff in error.

Mr. Carmel A. Garlutzo, for defendant in error.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

Olinger Mutual Benefit Association (referred to in this opinion as the "Association") seeks to have reversed the judgment entered against it on the policy of insurance it issued on the life of Mary Theresa Christy (designated herein the "insured"). The Association was unable to prevail on its theory that the policy was procured through misrepresentation and fraud, and asserts as error the adverse determination of the trial court in this respect.

Too facile a resolution would be reached by resorting to the rule that misrepresentation of a material matter gives cause for avoidance of an insurance contract by the insuror. That indeed would be decisive if the evidence in support of alleged invalidating misrepresentation and fraud, thrown on the scales, tipped the beam to the point indicating sufficient proof. Our problem is not the application of a principle, for that follows once enough evidence is introduced to implicate it; rather, it is the evaluation of the evidence.

The policy in question was issued on December 30, 1950. James S. Christy, insured's son, was nominated as beneficiary in the policy. At the time of the application for, and the issuance of, the policy the insured was living in Denver, and James at "P. O. Box 27, Aguilar, Colo."

The application for the policy was made by James, and so far as the record discloses the insured knew naught about the application or its contents. And further, there is nothing in the record to indicate that James designedly deceived in making answers to the information sought in the application. In other words, the record is devoid of anything indicating that James had not made full disclosure insofar as his personal knowledge of the insured's physical condition obtained.

Items 4, 5 and 6 of the application furnish the key to the problem which must be resolved. These items are as follows:

"4. Does any person above named now have or did he or she ever have any of the following: *Heart trouble, high blood pressure,* tuberculosis, paralysis, insanity, cancer, epilepsy, goitre, tumor, syphilis, kidney trouble, diabetes, physical injury or surgical operation? Yes. If yes, give details in Number 6.

"5. Has any person above named been *attended* by a physician or practitioner *for treatment* or been admitted to a hospital or sanitarium in the past three years? No. If yes, give details in Number 6.

"6.

| Name | Nature of Illness or Injury | Date | Duration | Result | Name and Address of Attending Physician |
|------|------|------|------|------|------|
| Mary | Severe case of flu (not pneumonia) | 1944 | 1 week | complete cure | Park View Hospital Pueblo, Colo. |
| . | slight touch High blood pressure | | past 15 years | kept normal by diet at present | Dr. Baker, M.D. ,, |

(Emphasis supplied.)

All answers given in response to the information sought are in the handwriting of the Association's agent. Also appearing in his handwriting is the direction that the policy is to be rated up, and in another handwriting there is a notation, "Approved with increase. C.W.J." One C. W. Jackson testified at the trial that he was the officer of the Association who examined and approved the application, and that the policy issued solely as a result of the consideration of the application.

On January 30, 1951, the insured died, and thereafter the necessary steps were duly taken by James to collect the proceeds of the policy. His claim was refused, and he rejected tender made to him of the premium which he had paid. Suit thereupon was filed to recover on the policy.

The Association answered the complaint, asserting five defenses, the third and fourth of which are the only ones necessary to a proper disposition of this case. In its third defense the Association averred that it "was induced to issue the policy * * * by the fraud and misrepresentation of the plaintiff, James S. Christy." Its fourth defense contained the following allegations:

"The representations and statements which plaintiff, James S. Christy made in the application which is a part of the policy described in the Complaint as to the insured's health, medical history and attendance by physicians were false. These false representations and statements were made by James S. Christy for the purpose of inducing this defendant to issue the policy described in the Complaint. Defendant relied on such statements in issuing said policy. Had such statements not been made or had defendant known the true facts in that regard it would not have issued the policy or insured the life of Mary Theresa Christy.

"Because of this fraud and misrepresentation and promptly on discovery thereof, defendant elected to rescind the policy and tendered refund of the $7.70 premium."

At the trial the written statement of Dr. Altieri, M.D., prepared and submitted to the Association as part of proof necessary to collect proceeds of the policy, was admitted in evidence at the request of the Association. The following questions and answers appear in this statement:

"3. How long have you known Deceased? Since 4/19/49

"4. How long have you been the attending physician? Since 4/19/49

"5. Have you ever attended or prescribed for the Deceased prior to last illness? No * * *

"6. Has Deceased received treatment from other physicians? No

* * *

"8. Date of first visit or prescription in last illness 4/19/49

"9. Date of your last visit 1/30/51

"10. When, in your opinion, was health first impaired? 4/19/49

"11. What disease caused death? (1) Arteriosclerotic heart disease and cardiac decompensation; (2) generalized arteriosclerosis and malignant hypertension.

"12. When did Deceased first commence to show symptoms of the disease which caused death? 4/19/49

"13. Did you acquire this knowledge from statements made to you by the Deceased? Yes"

The Association also introduced in evidence claimant's written statement, also part of necessary preliminary establishment of claim, from which we quote the following pertinent part:

"5. State all facts regarding the cause and circumstances of death Had vomiting spells for about a week — taken to Hospital Jan. 19th — Jan. 22nd had a heart attack and placed in oxygen tent and never recovered.

"6. State precise duration of the last illness of Deceased see above

"7. Name and address of every physician who at-

tended the Deceased during last illness Dr. J. A. Altieri, 3655 Tejon"

There is ambiguity in the attending physician's statement. He stated that he had never attended nor prescribed for the deceased prior to last illness; that his "first visit or prescription in last illness" was on April 19, 1949, and his last visit on January 30, 1951; and that the insured first commenced to show symptoms of the disease causing death on April 19, 1949. The answers of the doctor leave it doubtful as to whether he first visited or prescribed for the insured on April 19, 1949.

In his application James answered "yes" to the question asking whether the insured had any of a number of diseases. Among the diseases enumerated were heart trouble and high blood pressure. As required by the application he detailed that insured suffered from high blood pressure. He did not mention heart trouble, and the only matter that might indicate misrepresentation on this score is Dr. Altieri's statement that the insured commenced to show symptoms of this disease on April 19, 1949.

James stated in the application that the insured had not "been attended by a physician or practitioner *for treatment* or been admitted to a hospital or sanitarium in the past three years." (Emphasis supplied.) Refutation of this statement, if refutation can be made, lies in the doctor's statement that he first visited or prescribed in last illness on April 19, 1949. If it were a visit by the doctor, the statement is not necessarily false.

■ To be considered by the trial court in evaluating the evidence before it was claimant's written statement in which it appears that the last illness of the insured commenced on January 19, 1951. This statement, introduced as an exhibit by the Association, does not have inhering in it the frailty of testimony of an adverse party elicited by leading questions under Rule 43 (b), R.C.P. Colo. This rule is designed to permit refutation by the adverse party of testimonial evidence only. "[W]hile

the full statement of a party, when his admission is resorted to as evidence against him, must be received, it does not follow that every part must necessarily be credited; they are before the jury to be considered and weighed precisely as other evidence." *Nitro Powder Co. v. Kearns,* 50 Colo. 1, 114 Pac. 396.

The third and fourth defenses are affirmative in nature; in effect they admit the issuance and existence of the policy of insurance, but seek to avoid the contract on the ground of misrepresentation and fraud. Was the evidence of a character and weight sufficient to sustain these defenses? The answer to this question strikes at the heart of the problem of this case.

A policy of insurance is a contract. As a contract it is not sui generis. In most respects an insurance contract is treated in the law in the same way as any other contract. *North American Acc. Ins. Co. v. Cochran,* 74 Colo. 515, 223 Pac. 28. And an attempt at avoidance of the contract of insurance stands in no better and no worse position than the attempted avoidance of any other contract.

Whether the insurance company brings suit to cancel a policy of insurance or seeks to avoid the policy by defensive measures makes little difference; the burden of proof, the weight of the evidence, and the effect of a judgment favorable to the insurance company are the same in either case. "The burden and the nature of proof required is the same whether cancellation of an insurance policy is sought or a defense is asserted against a claim by the beneficiaries after the death of the insured during the two year contestability period." *N.Y. Life Ins. Co. v. Kaplan,* 195 Okla. 638, 163 P. (2d) 1009.

Where does the burden lie and what is the quantum of proof necessary to avoid a contract in this state? Beginning with the leading case of *Wilson v. Morris,* 4 Colo. App. 242, 36 Pac. 248, down to the case of *Hines v. Oliver,* 133 Colo. 40, 291 P. (2d) 693, the appellate courts of this state have said that contracts may be avoided

only after the presentation of clear and convincing evidence or evidence establishing beyond a reasonable doubt the fact of misrepresentation, fraud, concealment, or mistake.

A frequently quoted passage from *Wilson v. Morris,* supra, is the following: "[I]t is plain to be seen that, wherever a party undertakes to avoid the effect of an instrument which he has signed and sealed, he undertakes a task of exceeding difficulty. He can only discharge the burden which is cast upon him by the production of the *clearest, most satisfactory and indubitable proof* that the defendant is without the right to enforce the contract which he holds. According to the authorities, there is no difference between the two classes of cases — that is, the one where a party seeks to reform a contract to express the actual intention of the parties, and the one where he seeks the cancellation of an instrument as an entirety, because it is not an agreement which the defendant has the right to enforce." (Emphasis supplied.)

■ Shortly after the rendition of that opinion the court of appeals again announced the rule in *Tourtelotte v. Brown,* 4 Colo. App. 377, 36 Pac. 73, declaring that proof in support of an avoidance is insufficient when there are "slight circumstances of suspicion only," and that evidence warranting setting aside a contract "must be clear, strong, satisfactory and convincing."

A policy of insurance will not be reformed "on the ground of a mistake of fact unless the proof is clear, convincing and satisfactory, and it must be free from any reasonable controversy." This observation, made in *Conn. Fire Ins. Co. v. Smith,* 10 Colo. App. 121, 51 Pac. 170, has relevance to the problem at hand in that it did involve an insurance policy. And its felicity becomes more obvious when we realize there is an affinity between the remedies of avoidance and reformation of contracts. By reformation a written instrument is sought to be avoided in order that the real contract of the par-

ties may be established and made operative. See *Wilson v. Morris,* supra.

■ We heed the admonition of this court, quoting from a Pennsylvania decision, when it approvingly adapted these words to the question before it: "It has been more than once held that it is error to submit a question of fraud to the jury upon slight parol evidence to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable; otherwise it should be withdrawn from the jury." *D.&R.G. R.R. Co. v. Sullivan,* 21 Colo. 302, 41 Pac. 501.

The rule has been stated in language which is, if anything, more forceful, in the case of *Martinez v. Martinez,* 57 Colo. 292, 141 Pac. 469, and this language has been approved in the case of *Lesser v. Lesser,* 128 Colo. 151, 250 P. (2d) 130. We quote: "It is well settled that courts should be very guarded in setting aside duly executed instruments, by requiring clear and convincing proof of the facts upon which they are sought to be avoided. This does not mean proof to a certainty, but a mere preponderance of the evidence is not sufficient. The facts must be established beyond a reasonable doubt."

To like effect are the cases of *Robbins v. Nelson,* 70 Colo. 504, 202 Pac. 707; *Berlin v. Wait,* 71 Colo. 533, 208 Pac. 482; *Hooper v. Capitol Life Ins. Co.,* 92 Colo. 376, 20 P. (2d) 1011; *Roberts v. Roberts,* 113 Colo. 425, 158 P. (2d) 184.

It will be noted that the core of these decisions is clear, convincing and indubitable evidence and that on a number of occasions the court has said that proof beyond a reasonable doubt is necessary. In *Beeler v. The People,* 58 Colo. 451, 146 Pac. 762, the term "clearly" was considered and it was defined as meaning "without uncertainty, beyond a question, or beyond a reasonable doubt." " 'Clear' means 'plain, evident, obvious, free from doubt or conjecture, beyond reasonable doubt.' " *Richard v. Western Fire Ins. Co.,* 161 Fed. Supp. 115. "Indubitable" in the context used in these decisions means "without

434

doubt"; that a matter "be proved beyond a reasonable doubt." *Atlanta Ass'n v. Cowan,* 183 Ga. 187, 188 S.E. 21.

The rule enunciated in the foregoing Colorado decisions has been applied in other jurisdictions in a number of cases involving the attempted cancellation or avoidance of insurance policies. Thus, a policy will not be cancelled or annulled for fraud or mistake unless "the evidence of such fraud or mistake * * * be clear, cogent, and convincing, and such as to leave no room for reasonable doubt in the mind of the chancellor." *Security Life Ins. Co. v. Stockman,* 242 S.W. 103 (Mo. App. St. Louis). "When the insurance company relies on misrepresentation to avoid a policy, the misrepresentation must be conclusively shown." *Gulf Life Ins. Co. v. Shelton,* 155 Fla. 586, 21 So. (2d) 39. "[T]o sustain a charge of fraud as to answers made in an application for insurance the proof must be clear, cogent, convincing, and certain." *National Life & Acc. Ins. Co. v. Camp,* 77 Ga. App. 667, 49 S.E. (2d) 670. See *Service Life Ins. Co. v. McCullough,* 234 Ia. 817, 13 N.W. (2d) 440, 153 A.L.R. 697; *Beyer v. Fidelity Mutual Life Ins. Co.,* 116 Pa. Super. 311, 176 Atl. 535; *N.Y. Life Ins. Co. v. Bacalis,* 94 Fed. (2d) 200.

 Uncertainty and ambiguity in the answers appearing in the application and equivocal statements of the attending physician must all be resolved against the insuror. *Service Life Ins. Co. v. McCullough,* supra. As said in this case, " 'Where an insurance company or association seeks to avoid a policy or certificate of membership on the ground of falsity in the answer to a question which is by the terms of the contract made material, the court will construe the question and answer strictly as against the company, and liberally with reference to the insured. *Stewart v. [Equitable Mut. Life] Association,* [110] Iowa [528, 529], 81 N.W. 782. If any construction can reasonably be put on the question and the answer such as will avoid a forfeiture of the policy on

the ground of falsity of the answer, that construction will be given, and the policy will be sustained.'"

Here exhibits and other proof produced in support of avoidance are cast in such uncertain shape that the inferences to be drawn from them are of doubtful value and fall far short of the proof required in this type of case. "The defense is that the insured knowingly and willfully perpetrated a fraud upon the defendant in this respect. The burden was upon the defendant to satisfactorily prove this fraud, and the courts will not accept guesswork, speculation or doubtful inferences as satisfactory proof." *Northwestern Mutual Life Ins. Co. v. Farnsworth*, 60 Colo. 324, 153 Pac. 699.

■ We cannot say that the trial court, in considering the evidence adduced in this case, erroneously evaluated it. It would appear that the trial court properly entered judgment for James, for the evidence in support of avoidance is uncertain, not free from doubt, and therefore fails to have the substance and weight necessary to permit overturning the contract of insurance.

The judgment is affirmed.

Mr. Justice Moore dissenting.

Mr. Justice Hall and Mr. Justice Day not participating.

Mr. Justice Moore dissenting.

I am unable to agree with the conclusions of the majority opinion that there is an insufficiency of proof to sustain the contention of the insurance company that misrepresentations sufficient to void the policy were made in the application for coverage.

As I view the facts, the statement in the application that insured had not been attended by a physician for treatment within three years prior to the date of the application, was very definitely shown to be false. It appears from the statement of Dr. Altieri that he first

became acquainted with the insured on April 19, 1949. His statement was that he had been the "attending physician" since that date. In my judgment his statement establishes conclusively that the last illness of the applicant had already begun on April 19, 1949. The application for insurance was made on December 20, 1950, and the insured died forty days thereafter. The cause of death was "(1) arteriosclerotic heart disease with cardiac decompensation (2) generalized arteriosclerosis with malignant hypertension," and even a layman's knowledge concerning such a cause of death would lead only to the conclusion that the statement in the application explaining the physical condition of the insured was designed to mislead, or, if innocently made, was not a true statement of the facts.

When an applicant for insurance, in explaining his condition, makes an assertion that he has had a slight touch of high blood pressure over a period of fifteen years which "is kept normal by diet at present," knowing, as the applicant in this case did know, that no medical examination was required of him, the insurance company should have a perfect right to defend upon the ground of misrepresentation where the cause of death is admitted to be that which is present in this case.

The majority opinion fails to mention the case of *Capitol Life Insurance Company v. Thurnau et al.*, 130 Colo. 345, 275 P. (2d) 940; or that of *Germania Life Insurance Co. v. Klein*, 25 Colo. App. 326, 137 Pac. 73, both of which contain highly pertinent language applicable to the facts in this case.

For these reasons I must respectfully dissent.