## 26973. NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY *v.* BONNER.

DECIDED DECEMBER 1, 1938.  REHEARING DENIED DECEMBER 20, 1938.

*Hendrix & Buchanan,* for plaintiff in error.

*Howard, Tiller & Howard, Robert A. Alston Jr.,* contra.

STEPHENS, P. J.  Mrs. Bonner sued National Life & Accident Insurance Company, alleging that she was the beneficiary of a certain life-insurance policy on the life of Mrs. Clarkie Holcomb, that Mrs. Holcomb had died, and that the insurance company refused to pay to the plaintiff the proceeds of the policy.  The defendant answered, setting up that the policy was issued on the basis of certain representations in a written application signed by Mrs. Holcomb in which she agreed that the answers to certain questions in her application were complete and true, and that the answers should

form the basis of the contract of insurance; that in the application were the following questions and answers: "Are you in good health?" to which the answer was "Yes," and "What illness, injury or accident have you ever had?" to which the answer was, "Had miscarriage 1915, was in Atlanta hospital for three weeks, O. K. now;" that at the time Mrs. Holcomb was not in good health, and that the answer to the question "What illness, etc., have you had?" was not true for the reason that she was at the time suffering from high blood pressure, hypertension, and arteriosclerosis, and had suffered from these diseases for three years before the time of the application; that she had suffered from these diseases and had been treated for them, which fact she concealed from the defendant who did not know that she had suffered from them or either of them; that these diseases were of a serious nature and caused the death of Mrs. Holcomb some three months and seven days after the issuance of the policy, "she dying of a sudden heart attack;" that Mrs. Holcomb wilfully concealed from the defendant that she had suffered from hypertension or high blood pressure, and concealed the fact that she had been treated for these diseases and for arteriosclerosis, and that by reason of these concealments the contract of insurance never became effective and was void. The application was not attached to, and did not become a part of, the policy.

The evidence showed that the insured was for some years engaged in the occupation of a doctor's assistant, her duties being the nursing of maternity cases; that she was not a trained nurse, but was what the doctor called a "practical nurse;" that the doctor discovered that her blood pressure was at times above normal, and gave her certain medicines to reduce her blood pressure, "very infrequently and at very irregular intervals, maybe the average of three or four times a year. It was just occasionally. She was not a regular patient." The doctor testified: "I told her that she had high blood pressure, hardening of the arteries, I believe. I told her, two or three years, I believe, before her death, that she was suffering from hardening of the arteries." It will be noticed that the doctor qualified this statement that he had informed the deceased that she had high blood pressure or hardening of the arteries by the expression "I believe." Nothing appears from which it can be certainly inferred that the deceased knew that she

was seriously ill. Under the evidence, her physical condition did not in any way affect her ability to perform the arduous duties of her occupation during the two or three years elapsing between the time she first received such information as the doctor may have given her and the time of her application for the policy. On cross-examination the doctor testified: "The condition that I have described didn't prevent her from working right up to the time of her death, and apparently, so far as anybody could tell, and so far as work was concerned, she was in good health right up to the last. She could do good work." Agents of the insurance company who saw her several times when writing the policy and collecting premiums testified to her apparent good health. In her application for the policy she answered the question "Who is your doctor?" by giving the name and address of the doctor whose testimony is partly quoted above.

The jury found for the plaintiff. The defendant moved for a new trial on the general grounds. The court overruled the motion and the defendant excepted.

The sole issue was whether the policy was procured by fraud, that is, by false and fraudulent statements of the applicant as to her health and previous illness. The deceased gave the company information which enabled it to ascertain her medical history. This information could be considered by the jury on the issue whether she intended to defraud the company in taking out the policy. The Supreme Court has held: "'Good health' is a relative term, and does not mean absolute freedom from physical infirmity, but only such a condition of body and mind as that one may discharge the ordinary duties of life without serious strain upon the vital powers." *Atlantic & Birmingham R. Co.* v. *Douglas,* supra. See *National Life & Accident Ins. Co.* v. *Smith,* 34 *Ga. App.* 242 (129 S. E. 113). This language was repeated by the Supreme Court in *City of Atlanta* v. *Hampton,* 139 *Ga.* 389 (77 S. E. 393). The questions in the present case are controlled by *John Hancock Mutual Life Ins. Co.* v. *Yates,* 50 *Ga. App.* 713, 715 (2) (179 S. E. 239); *Interstate Life & Accident Co.* v. *Frazier,* 40 *Ga. App.* 811 (151 S. E. 529); and *National Life & Accident Ins. Co.* v. *Martin,* 35 *Ga. App.* 1 (132 S. E. 120).

The evidence authorized the verdict for the plaintiff, and the court did not err in overruling the defendant's motion for a new trial. *Judgment affirmed. Sutton and Felton, JJ., concur.*