## 27507. GUARANTY LIFE INSURANCE COMPANY v. JOHNSON.

DECIDED JULY 6, 1939.

*Anderson, Cann & Dunn, Miles W. Lewis,* for plaintiff in error. *J. A. Mitchell, J. G. Faust,* contra.

STEPHENS, P. J. Annie Johnson brought suit against Guaranty Life Insurance Company alleging that she was the beneficiary in a certain policy issued by the company on the life of Eddie Johnson, the late husband of the plaintiff, that Eddie Johnson died on June 8, 1937, "at which time the said policy was in force, a subsisting obligation on the said company to petitioner," that the plaintiff had duly complied with the requirements of the policy preliminary to the payment of the same, that the company failed and refused to pay the plaintiff the sum of $255 as provided in the policy, a copy of which policy was attached to and made a part of the petition.

The defendant filed a special plea in which it alleged that the plaintiff's claim had been fully settled on or about October 22, 1937, by an agreement by which $50 was paid to the plaintiff who

executed a general release to the defendant from all liability under the policy, a copy of which release being attached to and made a part of the plea. After filing this special plea, the defendant demurred to the petition on the ground that there was no allegation that the policy ever became due and payable to the plaintiff, that the allegation that the plaintiff had duly complied with the requirements of the policy preliminary to the payment of the same was merely a conclusion of the pleader, and that the petition failed to allege sufficient facts to constitute a cause of action. The defendant also filed a plea denying that the policy was in force and a subsisting obligation of the defendant at the time of the death of Eddie Johnson, denying that the plaintiff had complied with the requirements preliminary to payment, admitting that the defendant had not paid the plaintiff the sum of $255 and denying that this amount was due under the policy, and alleging that the policy was void because the insured was not in sound health when the policy was issued, he having been injured in a boiler explosion, receiving permanent injuries therefrom which were concealed from the defendant at the time the policy was issued. The defendant amended the plea by alleging that Eddie Johnson, in his application for life insurance, misrepresented his true age, placing his age at least three years younger than his true age. The court overruled the demurrers to the petition, to which ruling the defendant excepted pendente lite. The jury found in favor of the plaintiff in the sum of $205 with interest. The defendant moved for a new trial on the general grounds, and by amendment added several special grounds which assigned error on certain instructions by the court to the jury, on the failure of the court to instruct the jury on the burden of proof, and in the admission of certain evidence over objections. To the judgment overruling the demurrers and to the judgment overruling the motion for new trial the defendant excepted.

■ It was not error to overrule the demurrers. The petition showed that the plaintiff was the beneficiary of the policy, that the insured had died, that the policy was in force at the time of his death, that the company failed and refused to pay to the plaintiff the sum of $255 as provided in the policy. The allegation that the plaintiff had duly complied with the requirements of the policy preliminary to payment was a sufficient allegation of such com-

pliance since a copy of the policy was attached to and made a part of the petition. A technical defect in that there was no prayer for judgment is immaterial since the special demurrer did not point out this defect. Furthermore, the defendant in the special plea which it filed before demurring alleged that the plaintiff prayed for a judgment against the defendant in the sum of $255.

■ There is no merit in the contention that a false representation which was material to the risk would ipso facto void the policy regardless of fraudulent intent on the part of the applicant. Fraudulent intent consists in making the misstatement with knowledge of its falsity and that it was made for the purpose of procuring the insurance. The actual state of mind of the applicant can not be inquired into without reference to his outward acts. Fraudulent intent may be conclusively presumed where the applicant in the application made a material statement which he knew was false, and which he made with the view to procuring the insurance, and the company had no knowledge of the falsity and acted upon the representation to the company's injury, although the insured may not really have intended to prejudice the rights of the company, as was held in *Northwestern Life Ins. Co.* v. *Montgomery*, 116 *Ga.* 799 (43 S. E. 79). See *National Life & Accident Ins. Co.* v. *Falks*, 57 *Ga. App.* 384 (195 S. E. 463), and *National Life & Accident Ins. Co.* v. *Bonner*, 58 *Ga. App.* 876 (200 S. E. 319). In the present case the application was not attached to the policy.

■ There is no merit in the contention that the court erred in failing to charge as to the burden of proof as to the validity of the receipt which purported to settle any claim under the policy. It does not appear that the defendant made any request to charge on this subject.

■ The testimony objected to in ground 8 of the motion as to the statement made by the plaintiff to her collecting agent (the undertaker) that she intended to get a lawyer and sue, and that he replied "I will do all I can for you," was inadmissible. It was not proper to admit it on the theory of impeaching the agent who had testified against the plaintiff, because the agent had not been examined as to such conversation.

■ From a careful reading of the testimony it does not appear that any agent of the insurance company practiced any deception or misrepresentation as to the character of the $50 receipt which the

plaintiff signed. If there was any undue pressure to get the plaintiff to sign this receipt it came from the undertaker to whom the plaintiff had given power of attorney to collect the policy. While the evidence was conflicting in some points there was not enough to show that this ignorant colored woman did not understand that she was signing a receipt in full of any claim under the policy. There were four witnesses present at the time the plaintiff signed with her mark the receipt on the back of the policy for $50 in full settlement. These four witnesses were Peek, Norrington, McClindon (the undertaker), and Parker, the insurance agent. All four of these witnesses testified positively that the release was read over to the plaintiff before she signed it. The undertaker testified that his bill for the funeral was $128 on which he got $70 from the Bankers Insurance Company which left $58 due, and that when the check came he told her: "If you want to take the check, you owe me a balance of $58, and I will take the $50 in full settlement of the claim and pay the $5 grocery bill of Shep Peek, and I gave her $5 in money. I paid the grocery bill of $5 and gave her $5 and lost $8 on the funeral bill." The $18 which she got from the undertaker seems to have turned the scale in favor of making the settlement, as he testified: "That seemed to have been satisfactory with her when I left her." The plaintiff herself testified: "I came to that undertaker and tried to get him to help me get that policy and he was trying to help me. He did his best to get all he could for me on it. I don't claim he was trying to put up any job on me. He found out about this old suit my husband had filed against Flynt and Stewart the day he come to get the check. The undertaker told me about that. He went to see a lawyer about it for me, and told me what the lawyer said. He told me the lawyer said in view of that suit he didn't think I would get anything and I had better take the $50. I didn't ever agree to take the $50 because I told him all the time I wanted $255. I touched the pen all right."

While the plaintiff testified that she could not read or write, that the contents of the paper which she signed were not read over to her, that the agents of the insurance company did not allow her to consult her attorney before signing the paper, that she told them she would not take less than $255, which was the face value of the policy, that she did not know how much of the money Toombs

McClindon got, that she owed Toombs McClindon for burying her husband, that they told her they were paying her what the company said they should pay her, but she did not know how much it was, that they never told her she was getting any less than $255, and that they never told her they were going to settle with her for as little as $50, there was no evidence that any misrepresentation was made to the plaintiff as to the contents of the contract of settlement which she signed. The plaintiff does not show what was done to prevent her from consulting her attorney. It does not appear that she was fraudulently induced to sign a paper the contents of which were different from what she intended to sign. She herself admits that she was settling with the company, that she expected in the settlement to get the full amount of the policy, and did not consent for any less amount, and did not know the settlement was being made for any less amount. At best, under her testimony she made a settlement without knowing what she was doing, and no fraud was practiced on her. Whether she was fraudulently induced to make the settlement, she can not repudiate the settlement without offering to restore the benefit which she received. Under her own testimony, which must be construed most strongly against her, she received $5 in cash and her indebtedness to one of her creditors was paid. She made no offer to restore. W. & A. R. Co. v. Burke, 97 Ga. 560 (25 S. E. 498); Interstate Life & Accident Co. v. Shedrick, 57 Ga. App. 382 (195 S. E. 456), and cit.; Atlanta & West Point R. Co. v. Wise, 54 Ga. App. 666, 668 (188 S. E. 915).

The evidence demanded a verdict for the defendant on the plea of settlement, and the verdict for the plaintiff was unauthorized. The court erred in denying a new trial.

*Judgment reversed. Sutton and Felton, JJ., concur.*