## 32079. NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY OF TENN. *v.* CAMP.

DECIDED SEPTEMBER 15, 1948.

*Mrs. Mary J. Nelson, William F. Buchanan,* for plaintiff in error.

*Paul H. Anderson, Robert P. McLarty,* contra.

PARKER, J. Mrs. Mattie Lou Camp, the beneficiary in a policy insuring the life of her husband, Joesiah B. Camp, sued the National Life & Accident Insurance Company on the policy after her husband's death. It was agreed that the case be tried by the judge sitting without a jury. Judgment was rendered for the plaintiff, the defendant moved for a new trial on the general grounds only, and has excepted to the overruling of its motion.

The company defended on the ground that the insured, in his written application for the insurance, wilfully concealed material facts which increased the risks assumed by the company and thereby voided the policy. This defense was based on alleged false answers made by the insured to two questions in the application as follows: "21. Are you in good health?" Answered "Yes," and "23. What illness, injury, or accident have you ever had? Give details," which was answered "Tonsillectomy—Aug. 45, fully recovered." The application was not attached to or made a part of the policy. The parties agreed that the policy was issued, that the plaintiff was the beneficiary therein, and that proper proofs of death were made; and the defendant admitted a prima facie case in the plaintiff and assumed the burden.

The evidence material to the issues was substantially as follows: The agent for the company testified that he solicited and took the application from the insured who signed it; that each and every question in the application was asked of the insured; that to the question "Are you in good health?" the insured answered "Yes," and when the insured was asked "What illness,

injury, or accident have you ever had? Give details," the insured told the agent that he had a tonsillectomy in August of 1945, and subsequently had fully recovered; that the insured did not tell the agent about any other illness; that the answers appearing in the application were given by the insured and put in the application before he signed it; that the insured did not tell the agent anything about having been to Steiner Clinic, and the agent did not know that the insured had been to Steiner Clinic for examination, or that he was suffering from any cancerous condition; that the policy applied for did not require a medical examination, but this fact was not explained to the insured although he knew it; that the agent did not know the Camps before the night he visited their home, in response to a request from Mrs. Camp who desired to change the beneficiaries in some policies she already had; that nothing was said about any desire on the part of anyone to take additional insurance; that it was at the agent's solicitation that Mr. Camp took the policy; that the agent filled out the application form, with the exception of Mr. Camp's signature; that when he came to question 21, "Are you in good health?" he said to Mr. Camp, "There is no need to ask you that, I can look at you and tell you are in good health," but the question was asked and was answered in the affirmative by Mr. Camp; that he appeared to be in good health, and from his physical appearance was in perfect health.

The policy, the application, the claimant's statement, the physician's statement, and the certificate of death were put in evidence by the defendant; also two letters from Dr. Stewart who examined and treated the insured. The application was dated December 20, the policy was dated December 31, 1945, and the insured died on April 7, 1946. The cause of death was "Metastatic Carcinoma—primary site undetermined. Immediate cause of death—probable cerebral metastasis." The letters showed that the insured was first seen at Steiner Clinic on December 14, 1945, with enlarged masses in his neck; that tissue removed from this was reported as showing cancer, and he was given X-ray treatments in December, 1945, and January, 1946, and was in the hospital from March 18, to April 4, 1946; that Dr. Stewart saw the insured on December 27, 1945, and again on January 21, 1946, at which time he had glands in his arm

pits as well as his groins, and some pain in his neck. The usual custom of the clinic is not to tell patients that they have cancer, and Dr. Stewart presumed that custom was followed in this case. He stated also that patients rarely are able to determine that they have cancer, regardless of their general condition.

Mrs. Camp, the plaintiff, testified: that she married the insured on September 15, 1945; that prior to the issuance of the policy he was in good health, although he had something like a swollen gland on the side of his neck, sometime before August, 1945, at which time he had his tonsils removed, after which the swelling disappeared; that Dr. Mathews of Dallas, Georgia, performed the tonsil operation and treated the insured later on with penicillin when he had a recurrence of the swollen glands, after which treatment the swelling disappeared again; that upon a recurrence of the swelling on December 14, 1945, the insured went to see Dr. Stewart in Steiner Clinic, at the suggestion of his mother-in-law who knew and recommended the doctor, and went to the clinic again in December, the date appearing from the doctor's records to be the 27th. Mrs. Camp also testified that her husband "did not know where or what the Steiner Clinic was," when her mother suggested it to him; that it was February or March, 1946, before she became aware that something was wrong with her husband; that he never complained, but said he felt good and was working regularly as a carpenter for Fruit Growers' Express, being active and able to perform strenuous work up through February, 1946. Mrs. Camp never learned definitely that Mr. Camp had cancer, but she was told that he did have a cancerous condition just before they brought him home in April, four days before his death. That was the first information given her. A witness who worked with the insured in repairing refrigerator cars sometime after January 7, 1946, testified that the insured was able to perform this work, requiring strenuous physical exertion and the lifting of heavy weights, that he did not complain about his health, and the witness did not notice anything in his physical appearance or the manner in which he worked to indicate he was not in good health. A next-door neighbor of the Camps testified that she knew the insured from August, 1945, until his death; that she saw him quite often going to and from work, and talked to him on a few occasions; that she did not

know that the insured was even sick until a short time before he died, as he worked regularly and she saw no change in his condition while she knew him.

The only question for decision is whether the evidence supported the finding in favor of the plaintiff. After verdict that view of the evidence which is most favorable to the prevailing party will be accepted, because every presumption and inference is in favor of the verdict. *Metropolitan Life Ins. Co.* v. *Joye*, 77 *Ga. App.* 357 (48 S. E. 2d, 751). The burden of showing that representations made by the insured in his application were material, untrue, and fraudulent, is on the defendant in a suit brought upon an insurance policy. *O'Connell* v. *Supreme Conclave*, 102 *Ga.* 143 (28 S. E. 282, 66 Am. St. R. 159). Furthermore, "To sustain a charge of fraud as to answers made in an application for insurance the proof must be clear, cogent, convincing and certain." *National Life &c. Ins. Co.* v. *Falks*, 57 *Ga. App.* 384, 389 (195 S. E. 463). False representations material to the risk will not ipso facto void the policy regardless of fraudulent intent on the part of the applicant. *Guarantee Life Ins. Co.* v. *Johnson*, 60 *Ga. App.* 292, 294 (3 S. E. 2d, 773). "Where an application for a policy of insurance is not attached thereto or referred to therein, it is not to be regarded as a part of the contract, and in such a case material statements or representations made by way of application will not void the policy, unless they be not only false but also fraudulent." *Interstate Life & Accident Co.* v. *Bess*, 35 *Ga. App.* 723(1) (134 S. E. 804), and cit. In order for false statements in an application not attached to or made a part of the policy to be fraudulent within the meaning of the law on this subject, they must have been knowingly or intentionally made by the insured. *National Life &c. Ins. Co.* v. *McKenney*, 52 *Ga. App.* 466 (183 S. E. 659). "Fraudulent intent consists in making the misstatement with knowledge of its falsity and that it was made for the purpose of procuring the insurance." *Guaranty Life Ins. Co.* v. *Johnson*, supra, p. 294.

Tested by these rules of law, the company did not carry the burden of showing that false representations were wilfully and fraudulently made by the insured, and the judgment for the plaintiff was authorized by the evidence. The representation by the insured that he was in good health, and his failure to tell

the agent that he was suffering with cancer, are not shown to have been fraudulent. " 'Good health,' 'illness,' and 'disease' must be considered, in an application for insurance, not in the light of scientific technical definitions, but in the light of the insured's understanding in connection with which the terms are employed in the examination." *National Life &c. Ins. Co.* v. *Falks,* supra, citing Northwestern Mut. Life Ins. Co. *v.* Wiggins, 15 Fed. 2d, 646, 648. Although the insured had a recurrence of the swelling in his neck about a week before the application was made, and went to the Steiner Clinic for an examination, the evidence does not show that he knew that the swelling was a cancerous condition or other serious impairment. A similar swelling had passed away when he had his tonsils removed in August, 1945, and after a recurrence sometime thereafter, had disappeared again when he was treated with penicillin. The insured was not asked whether he had been to a clinic or hospital, and the evidence shows that he did not know where or what the Steiner Clinic was, and that he went there solely upon the suggestion of his mother-in-law who knew and recommended Dr. Stewart. The first and only visit to the clinic made by the insured before the application was signed, according to the doctor's records, did not result in any treatments at that time, but was merely an examination and diagnosis. The insured did not solicit the policy. He appeared to be in good health, so much so that the agent almost apologized for asking that question in the application. The insured worked regularly at strenuous labor as a carpenter for approximately two months after the application was made, and did so without complaining or showing any signs of illness or disease. The whole complexion of this case from the standpoint of the plaintiff seems to show the good faith of the insured; and certainly the evidence was insufficient to show wilful and fraudulent representations knowingly made, which would void the policy. This case is controlled in principle by the rulings in *National Life &c. Ins. Co.* v. *McKenney,* supra, *National Life &c. Ins. Co.* v. *Williams,* 53 *Ga. App.* 677 (187 S. E. 145), *National Life &c. Ins. Co.* v. *Falks,* supra, and *National Life &c. Ins. Co.* v. *Bonner,* 58 *Ga. App.* 876 (200 S. E. 319).

The company relies on *Kelly* v. *Interstate Life & Accident*

*Co.,* 49 *Ga. App.* 766 (176 S. E. 793) ; *National Life &c. Ins. Co.*
v. *Strother,* 53 *Ga. App.* 241 (185 S. E. 373) ; *Guaranty Life Ins.
Co.* v. *Johnson,* supra; *National Life &c. Ins. Co.* v. *Fischel,* 62
*Ga. App.* 645 (9 S. E. 2d, 192) ; *National Life &c. Ins. Co.* v. *Atha,*
69 *Ga. App.* 825 (26 S. E. 2d, 675) ; *Northwestern Life Ins. Co.*
v. *Montgomery,* 116 *Ga.* 799 (43 S. E. 79) ; *New York Life Ins.
Co.* v. *Hollis,* 177 Ga. 805 (171 S. E. 288) ; *Vaughn* v. *National
Life &c. Ins. Co.,* 189 *Ga.* 121 (5 S. E. 2d, 238). We have con-
sidered these cases and find that they all differ materially and
substantially on their facts from the instant case. Two cases
are rarely, if ever, exactly alike. While legal principles must
be applied in all cases, differing facts necessarily differentiate
the rules of law applicable to a case. We are dealing here with
a question of evidence, whether or not it was sufficient to sustain
the finding of the trial court. While we have found no case on
all fours with this case under its facts, our view is that it is so
nearly like the cases relied on by the plaintiff that the rules of
law applied in those cases are applicable here.

The evidence being sufficient to support the finding in favor
of the plaintiff, and in the absence of any error of law, the court
properly overruled the defendant's motion for new trial.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*